and laws of this State at the time he offered to vote.

 The question as to whether one is an actual bona fide resident of a new place depends on the intention of the party, as residence once established is retained until another is acquired. The record shows unquestionably that Beyeaux had established a residence at Sulphur, Louisiana, prior to the acquisition of the Sellers property. Whether he intended to establish a residence when he purchased the Sellers property must be determined by his expressions, conduct, and the testimony in the record. The testimony in the record of the two witnesses is not, in our opinion, sufficient to show that such was his intention at that time, especially since the documentary evidence is to the contrary and should be given consideration in the absence of any expression on Beyeaux's part that he intended to establish a residence in Beauregard Parish at the Sellers place. In fact, the subsequent developments, the purchase of the Eisenblatter property and the moving of his family thereon, indicate that it was then he intended to establish a residence in the school district.

The Eisenblatter property was purchased by Beyeaux on June 25, 1945; sometime thereafter he moved his family thereon. The tax election was held on August 21, 1945. Consequently, Beyeaux was not an actual bona fide resident as contemplated by the Constitution and laws of the State

for the prescribed period at the time he voted at the tax election, and the valuation he voted should not be accepted.

It is not necessary to consider the other two assignments of error for the reason that the election has failed to carry in amount of valuation by the rejection of Beyeaux's vote.

For the reasons assigned, the judgment of the lower court is reversed and set aside; the tax election is decreed null and void, and the injunction issued herein is reinstated and perpetuated, prohibiting defendant from proceeding any further under authority of the election. All legal costs are to be paid by the defendant.

30 So.2d 200

**ROBINSON v. MARKS et al.**

**No. 38352.**

Feb. 10, 1947.

Rehearing Denied March 17, 1947.

G. P. Bullis, of Ferriday, for appellant.

Philip Watson, of St. Joseph, and Sholars and Gunby, of Monroe, for defendants-appellees.

HAWTHORNE, Justice.

Plaintiff, Wallace Robinson, instituted this suit seeking to have declared null, void, and of no effect a mineral conveyance, made by his wife, Narcisie Robinson, to H. M. Marks, of an undivided one-half interest in and to the oil, gas, and other minerals under or upon a certain tract of land containing 35.9 acres, and to have its inscription cancelled and erased from the conveyance records of Tensas Parish.

Plaintiff alleged that he was the true and lawful owner and was in actual physical possession of Lot 2, containing 22 acres, and Lot 7, containing 13.9 acres, of the Pin Hook Plantation, as shown by plat thereof recorded in Deed Book AA, page 585, of the records of Tensas Parish, all situated in Township 11, Range 10, of that parish; that the property was acquired by the community existing between petitioner and his wife, Narcisie Robinson, by act of sale from H. M. Marks to Narcisie Robinson, dated June 8, 1939; that H. M. Marks and

Robert W. Hair were claiming to own an undivided one-half interest in the oil, gas, and other minerals lying under or upon said lands by virtue of an act of conveyance from plaintiff's wife, Narcisie Robinson, to H. M. Marks, dated October 3, 1939; that the conveyance to H. M. Marks was null, void, and of no effect because it was not signed by petitioner as the head and master of the community, this mineral grant being signed only by his wife, Narcisie Robinson, who had no right or authority to convey this mineral interest.

Defendants, H. M. Marks, the vendee named in the mineral deed from Narcisie Robinson, and Robert W. Hair, who had acquired a 4/23 royalty interest by mesne conveyances from Marks, admitted in their answer that A. B. Marks and H. M. Marks, as owners conveyed the lands involved in this litigation to Narcisie Jordan Robinson, wife of plaintiff, but alleged that, pursuant to a contract and agreement with her, the deed was placed in the custody of Philip Watson, to be held in escrow and delivered to the vendee named therein upon the payment of the purchase price and upon delivery of a deed conveying to one of the vendors, H. M. Marks, an undivided one-half interest in the oil, gas, and mineral rights in, under, and upon said lands; that on October 3, 1939, concurrently with the delivery of the deed conveying the land, the price thereof was paid by the vendee, and a deed, signed and executed by her conveying an undivided one-half interest in the oil, gas,

and mineral rights to H. M. Marks, was delivered to him, and that the deed to the land and the mineral deed were concurrently filed in the office of the clerk of Tensas Parish.

Defendants further averred that the sale from H. M. Marks and A. B. Marks to Narcisie Jordan Robinson, the escrow agreement, and the deed in conveyance of an undivided one-half mineral interest to H. M. Marks, were all entered into, made, and executed as one entire and indivisible contract, with the knowledge, approval, and consent of the plaintiff herein, Wallace Robinson.

The district judge rendered judgment on the merits in favor of defendants and against plaintiff, rejecting plaintiff's demands and recognizing and maintaining defendants' mineral titles. From this judgment plaintiff has appealed.

The record in this case discloses the following facts:

Mr. Philip Watson, attorney-at-law, practicing in St. Joseph in Tensas Parish under the firm name of Young & Watson, was employed by Narcisie Robinson, wife of plaintiff, Wallace Robinson. Pursuant to this employment he prepared an act of sale or deed in which H. M. Marks and A. B. Marks were named as vendors and Narcisie Robinson as vendee. This deed was then sent to the vendors for their signatures, one residing in Mississippi and the other in Texas. The deed was signed

by A. B. Marks on May 29, 1939, and by H. M. Marks on June 8, 1939, and was returned to Mr. Watson.

The purchase price named in the deed was to be paid to the vendors from the proceeds of a loan to be made by Narcisie Robinson through the Federal Land Bank. The firm of Young & Watson, which was on the approved list of attorneys for the Federal Land Bank in Tensas Parish, represented Narcisie Robinson in the preparation of the necessary abstracts, etc., in consummating the loan.

Shortly after the deed had been mailed to the vendors and prior to its return, H. M. Marks; one of the vendors, informed Mr. Watson that in the deed as drawn there was no reservation of any minerals, and that, according to the agreement and understanding with Narcisie Robinson, he was to retain or reserve one-half of the minerals. After a further discussion, it was agreed that, instead of drafting a new deed with reservation of one-half of the minerals to H. M. Marks, the deed as originally prepared, which had already been signed and executed by the vendors, would be returned to Watson at his office, with the understanding that it was to be held in escrow and to be delivered to the vendee, Narcisie Robinson, upon the execution by her of a deed conveying to H. M. Marks one-half of the minerals lying on or under the land described in the deed, and upon the payment by the vendee of the purchase price.

The mineral reservation was not incorporated in the deed from H. M. and A. B. Marks to the vendee for the reason, according to the testimony, that the Federal Land Bank at that time objected to a mineral reservation in the title of a prospective borrower, and that H. M. Marks agreed to accept a deed conveying to him one-half of the minerals under the property in order to facilitate the obtaining of a loan by Narcisie Robinson through the Federal Land Bank.

The mortgage evidencing this loan was executed and filed in the mortgage records of the parish on July 22, 1939, but the purchase price named in the deed was not then paid for the reason that the Federal Land Bank had certain requirements to be met before the loan was completed and the proceeds disbursed. It took some time to comply with these requirements because there was difficulty in cancelling certain old mortgages.

On October 3, 1939, the Federal Land Bank loan was consummated. On that same day the cash consideration in the deed, the sum of $390, was paid to the vendors from the proceeds of the loan, and at the same time Narcisie Robinson executed a deed conveying to H. M. Marks one-half of the minerals lying on and under the property described in the deed from H. M. Marks and A. B. Marks to her. The deed conveying the tract of land was filed for record on October 3, 1939, at 2:05 p. m. and was recorded in Notarial

Book AA, page 585, of the records of Tensas Parish, and the deed conveying one-half of the minerals to H. M. Marks was filed on the same day at 3:20 p. m. and was recorded in the same notarial book at page 587.

Although plaintiff, Wallace Robinson, did not sign the mineral deed, he admitted that he was present when the loan was consummated and the purchase price paid from the proceeds thereof, at which time the deed was executed by his wife conveying the minerals to H. M. Marks.

■ We are convinced by our examination of the entire record that the deed from A. B. and H. M. Marks to Narcisie Robinson, conveying Lots 2 and 7 of the Pin Hook Plantation, was executed by the vendors subject to an escrow agreement—that is, subject to the payment of the purchase price and a conveyance to H. M. Marks of one-half of the minerals lying on, in, and under the lands to be conveyed. The law is well settled that parol evidence is admissible to show or prove an oral escrow agreement and the conditions thereof. Viso v. Gullo et al., 179 La. 8, 153 So. 3; First National Bank v. Guynes et al., 11 La.App. 323, 123 So. 461; Smith v. Hardy et al., La.App., 190 So. 180.

■ The testimony of Mr. Philip Watson, a reputable attorney of the Tensas bar, proves beyond any question that Narcisie Robinson was a party to the escrow agreement and was familiar with all of its details, and this testimony, as stated above, was clearly admissible to prove the oral escrow agreement and the conditions thereof. We quote the following extracts from his testimony:

"Q. Now were the details of the transaction given to you by Narcisse Jordan Robinson as to just what she proposed to do? A. Yes, sir. Our original employment was by Narcisse. * * *

"Q. Now did Narcisse Robinson understand just how this transaction was being handled by you and carried out? * * * A. We represented Narcisse in connection with the matter and she was fully advised throughout the entire proceeding as to its details.

"Q. And she had told you at the outset, what she wanted you to do in representing her? A. Yes, sir. She came to me for that purpose. I have a definite recollection of advising her all the way through as to the entire transaction, including the matter of the one-half interest in the minerals.

"Q. Well, what I specifically would like to know, Mr. Watson, is whether or not she knew that you were holding this deed to be delivered to her upon payment of the purchase price and the execution by her of the deed to the one-half interest in the mineral rights and whether she had authorized you insofar as you were acting for her to handle the matter in that way? A. Yes, sir. There is no question whatever in my mind that I was fully authorized, as her at-

torney, to consummate the matter as it was consummated and that she knew the conditions under which I held the deed. I do have a distinct recollection of discussing the mineral reservation feature of the matter with her in the office, I don't remember the exact date.

"Q. She came to your office several times to see you about this matter? A. Yes, sir, she was very anxious to get the property back for her home. At that time conditions were pretty bad.

"Q. Did her husband, Wallace Robinson, ever come to the office with her to discuss the matter with you? A. I feel sure that he was there on several occasions. Whether he was with her every time I don't remember. I heard him make the statement this morning on the stand that he was present when the transaction was closed."

Narcisie Robinson herself did not testify, and Mr. Watson's testimony as to her knowledge of the escrow agreement and its conditions is uncontradicted.

There is no doubt that the sale from A. B. and H. M. Marks to Narcisie Jordan Robinson of the land, the escrow agreement, and the conveyance of an undivided one-half interest in the oil, gas, and mineral rights to H. M. Marks were all entered into, made, and executed as one entire and indivisible contract, with the full knowledge, approval, and consent of Narcisie Jordan Robinson and the plaintiff herein, Wallace Robinson, and constituted one transaction.

That this was one transaction is corroborated by the fact that, when the proceeds of the Federal Land Bank loan finally became available on October 3, 1939, to pay the purchase price of the land, Narcisie Robinson paid the purchase price and at that time executed the mineral deed, both this instrument and the deed conveying the land to her being recorded on that same day in the same notarial book of the parish.

It is true that in this case we have before us for consideration two deeds, the land deed and the mineral deed, but, as we have stated above, both of these instruments were executed pursuant to the escrow agreement and to carry out the terms and conditions thereof, and constitute one transaction. Since these deeds constitute one entire and indivisible contract or one transaction, H. M. Marks was never divested of title to one-half of the minerals lying on, in, and under the property conveyed by H. M. Marks and A. B. Marks to Narcisie Jordan Robinson. Title to one-half of these minerals never vested in Narcisie Robinson and consequently never became a part of the community existing between her and Wallace Robinson. The two instruments, when considered as constituting one transaction, produce the same effect as would have resulted if a reservation of one-half of the minerals had been made in the conveyance of the land.

We concede, as contended by plaintiff, that property acquired by purchase during marriage in the name of the wife alone is presumed to become property of the community between husband and wife, and that an unauthorized sale of community property by the wife, without the signature of the husband, is null and void. Nevertheless, the conveyance of one-half of the minerals in the property by Narcisie Robinson, the wife, to H. M. Marks is not null and void, for the reason that she was not conveying community property by her execution of the mineral deed, as one-half of the minerals never became a part of the community existing between her and plaintiff, Wallace Robinson.

The necessity for two deeds rather than one deed with reservation of the minerals was brought about by negotiations with the Federal Land Bank, but the evidence concerning the escrow agreement clearly shows that it was never the intention of the vendors to convey, or of Narcisie Robinson to receive, the one-half of the minerals represented by the deed from Narcisie Robinson to H. M. Marks.

The general rule as to such transactions as this is set out in 17 C.J.S., Contracts, § 298, page 714:

"Where several instruments, executed contemporaneously or at different times, pertain to the same transaction, they will be read together although they do not expressly refer to each other.

"As a general rule, sometimes by reason of express statutory provision, where several instruments are made as part of one transaction, they will be read together, and each will be construed with reference to the other. This is true, although the instruments do not in terms refer to each other. So if two or more agreements are executed at different times as parts of the same transaction they will be taken and construed together."

This rule is expressed in 12 Am.Jur., Contracts, Section 246, page 781, as follows:

"Several instruments constituting part of the same transaction must be interpreted together. Thus, if a transaction involves two writings, a proposition and a response, they should be construed together. The general rule is that in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together, it being said that they are, in the eye of the law, one instrument. Moreover, when two instruments are entered into between the same parties concerning the same subject matter, whether made simultaneously or on different days, they may, under some circumstances, be regarded as one contract and interpreted together. * * *"

In the decisions of the courts of our sister states, we find full authority for the general rule quoted from Corpus Juris

Secundum and American Jurisprudence, and for our conclusion that the land deed and the mineral deed, under the facts of this case, are to be considered as one transaction.

In the case of MacLorinan et al. v. Finley et ux., 124 Kan. 637, 261 P. 587, 588, one of the plaintiffs, Perkins, offered to sell a half-section of land outright for $35 per acre, or for $25 per acre with reservation of the oil and gas to him. Defendant Finley decided to buy on the latter terms, and a written contract to that effect was executed by Perkins 'and Finley on January 25, 1919, which provided that Perkins reserved all oil and gas rights. Pursuant to this contract, Perkins and his wife executed a deed to the half-section, specifically reserving the oil and gas rights. Finley and his wife, after examining this deed, stated that they preferred to have the matter of the grantor's oil and gas rights embodied in a separate instrument. Perkins assented to this, and accordingly he and his wife made a deed of general warranty in favor of the defendant, Anna S. Finley, wife of H. C. Finley, and Finley and his wife executed a separate instrument to Perkins, granting to him "all the oil and gas" in and under the premises, "subject to one certain oil and gas lease now of record," this lease being to Mattes Bros., of Joplin, Missouri. Following the execution of these instruments, Finley and his wife went into possession of the property. A year or two later, the oil production under the Mattes lease hav-ing ceased, this lease was surrendered to Perkins for cancellation. On February 18, 1926, Perkins leased the oil and gas rights to one of the plaintiffs, C. S. MacLorinan, and within a few months thereafter Mac-Lorinan brought in a gas-producing well. Finley and his wife laid claim to the landlord's royalty as well as to a balance of royalties still in the hands of the Prairie Oil & Gas Co., through which company the oil and gas production was being marketed. Plaintiffs brought suit to quiet title to the oil and gas rights under the half-section of land. The trial court gave judgment for the plaintiffs, Perkins and his lessee, MacLorinan, and defendants appealed.

In affirming the judgment of the lower court, the Supreme Court of Kansas considered the contract to sell, entered into between these parties on January 25, 1919, the subsequent general warranty deed in favor of defendant, Anna S. Finley, and the separate instrument executed by Finley and his wife to Perkins, granting to him all the oil and gas in and under the premises, as a single transaction, and in so holding said:

"* * * The complemental instrument executed reciprocally by the Finleys granting and confirming to Perkins the oil and gas rights was just as much a part of the same contract and just as immune from impairment, alteration, or impeachment as the deed from Perkins on which the defendants so confidently rely. The written agreement for the purchase and sale of the half section, and the Perkins deed to Mrs. Finley,

and the reconveyance of the gas and oil rights to Perkins should be considered as integral parts of a single transaction so far as determining the respective interests of the parties in this land is concerned. All this is settled law. * * *"

Further in the course of the opinion the court, in holding that the Finleys were not the owners of the oil and gas rights, stated:

"* * * They never have owned them. They belonged to Perkins, subject to the prior lease in favor of Mattes Bros. with which defendants have no concern. When, pursuant to the arrangement of the parties for the sale of the land without the oil and gas rights to the Finleys, a deed of general warranty was executed by Perkins to Mrs. Finley, she, for the time being, and until the reciprocal instrument which defendants choose to denominate a 'lease' was executed by them to Perkins, might conveniently be called the nominal title holder of the gas and oil rights—although Finley [Perkins] never ceased to be the actual owner thereof."

The following cases are also full authority for the general rule as quoted hereinabove and as laid down in the MacLorinan case: Lowish v. Rowland, 86 Ind.App. 597, 158 N.E. 913; First Nat. Bank of Snyder v. Evans et al., Tex.Civ.App., 1943, 169 S.W.2d 754.

Various pleas of estoppel, prescription, res adjudicata, and other motions were filed in this case by plaintiff or defendants. We

have carefully considered these pleas and motions, but, inasmuch as we have disposed of this case on other grounds, we find it unnecessary to pass on them.

For the reasons assigned, the judgment appealed from is affirmed; appellant to pay all costs.