LOTTINGER, Judge..,'
: This is an action wherein the plaintiff' seeks to have a certain act of sale of record' in the Parish of East Baton Rouge declared null, and void. ■ ■
" The pleadings and evidence reflect the following: On August 10, 1908, .the plaintiff, Mannie Thomas, • married one' Queen Washington in Adams County, Mississippi. By act of sale dated November 2, 1918, Queen Washington Thomas purchased from Scotland Plantation for the recited sum of $100 cash the following, described property:
“One certain (1) lot of ground in Richniond Park, a Suburb of the City *34 of Baton Rouge, situated in the Parish, of East Baton Rouge, State of Louisiana, and described according to the official plat of said subdivision and made by Marshall P. Robertson, surveyor, on file at the office of the Clerk of Court and ex-officio Recorder of the Parish of East Baton Rouge, Louisiana, as Lot Number Thirty-eight (38) of Square Number Two (2) of said Richmond Park, said lot having a front of thirty-five (35) feet on Lexington Avenue by a depth of one hundred (100) feet, more or less between parallel lines.”
In the above mentioned act, the purchaser was designated as “Mrs. Queen Thomas, born -, a widow of Manny Thomas, deceased.”
Apparently the taxes for the year 1919-were not paid and the property was sold to one Clive Wetherell Kernan. By act dated September 1, 1920, which was in the nature of a quit claim or redemption, the property was placed in the name of “Queen Thomas, born Washington, wife of Mannie Thomas.”
By act of sale dated March 4, 1947, Queen Thomas sold the property to one of the defendants, Carrie Thomas Winsey, wife of Levell Winsey, for the recited consideration of $800 cash. In this act the vendress designated herself as “Queen Thomas, widow of Mannie Thomas.”
Some five years later, namely on July 29, 1952, Queen Thomas died. And, on February 3, 1953, Mannie Thomas (from whom she had never been divorced or separated from bed and board) instituted this suit seeking to set aside the sale dated March 4, 1947, on the ground that the property was community property having been purchased during the marriage with the result that the wife was therefore without authority to sell same. In the alternative it was pleaded that, the sale was a simulation as no portion of the recited cash consideration had ever been paid.
The defendants first filed exceptions of no right and no cause of action and then answered setting forth that at the time Queen Thomas purchased the property she was living separate and apart from her husband and, as the funds used were earned by her while living separate and apart from him, the property belonged to her separate estate and was therefore subject to disposition by her alone as she saw fit. The answer recites further that certain improvements were placed on the property by both the decedent, Queen Thomas, and the defendant vendee. The prayer of the answer seeks the sum of $1,100 (for improvements made by Queen Thomas) and $2,308.67 (for improvements made by Carrie Thomas Win-sey) in the event the property be found to have belonged to the community.
Following trial on the merits the court below rendered judgment decreeing the subject property as belonging to the community formerly existing between Mannie Thomas and Queen Washington Thomas and annulling the sale thereof to the defendant Carrie Thomas Winsey. It was further ordered that the alternative demands of all litigants be dismissed, with the right being reserved to the defendants to assert, in a proper suit, any claim they might have against the succession of Queen Washington Thomas for improvements placed on the property.
Following the rendition of this judgment the defendants applied for and were granted a new trial and rehearing. Upon the conclusion of the new trial judgment was rendered affirming the original judgment insofar as same decreed to the property as belonging to the community of acquets and gains previously existing between Mannie Thomas and Queen Washington Thomas and annulling the sale thereof to Carrie Thomas Winsey dated March 4, 1947, but setting aside the original judgment by also decreeing the purported sale to the defendant Carrie Thomas Winsey a simulation and thus void and of no effect. Judgment was also rendered in favor of the plaintiff rejecting the demands of the defendants for improvements but reserving to them their right to proceed against the succession of Queen Washington Thomas.
The learned trial judge rendered written reasons in support of the original judgment *35 and that rendered after the new trial. In the course of his original reasons, he found as follows:
“On the main demand it is sufficient to say that all property acquired by the husband and wife during the marriage is presumed to belong to the community.
“Where it is claimed that property bought by one of the spouses during the existence of the community is his or her separate property the burden of proof is upon him or her who alleges that the property so acquired is separate property. See Succession of Burke, 107 La. 82, 31 So. 391; Succession of Manning, 107 La. 456, 31 So. 862; De Maupassant v. Clayton, 214 La. 812, 38 So.2d 791; Betz v. Riviere, 211 La. 43, 29 So.2d 465; Block v. Melville, 22 La.Ann. 147; Jordy v. Muir, 51 La.Ann. 55, 25 So. 550.
“A careful reading of the testimony in this case fails to convince me that Queen Washington Thomas and her husband, Mannie Thomas, were, when the aforesaid property was acquired living separate and apart, or that the funds with which the property was bought were earned by the wife while living separate and apart from her husband.
“It is very true that the evidence shows that during the marriage the husband was frequently absent from home, — sometimes for quite a long while, but it also shows that after thus absenting himself he returned to his wife from time to time and that on occasions he gave her money.
“It is worthy of mention that when Queen Washington acquired the property in dispute, she represented herself to be a widow, and again, when she sold it to this defendant the same recitation was made in the deed. Of course, both she and this defendant knew that this recitation was untrue. Just why this was done is beyond my conception or imagination.- Sufficeth to : say it did not suffice as a representation that she was a married woman living separate and apart from her husband and that the funds with which she bought the property were earned by her while living separate and apart from her husband. The facts are that she was not a widow and that she actually lived with the plaintiff both before and after she acquired the property in question.
“I have, for the reasons assigned, concluded that the sale of the property described in the petition by Queen Washington Thomas was and is an absolute nullity and it is so decreed.”
With respect to this same point the trial judge in his secondly rendered reasons for judgment found as follows:
“On the question as to whether .or not the plaintiff and his wife Queen Washington Thomas were married and living separate and apart in the years. 1918 and 1920, the evidence introduced on the new trial is as confusing and unsatisfactory as that originally offered.. There can, be no doubt that after the year 1932, plaintiff and his wife lived separate and apart. Prior to that time the preponderance of the evidence is to the effect that at times plaintiff was absent from home engaged . in work at different places, but that on his return he and his wife lived together and that both of them worked, — some time at the same place, and that plaintiff at different times gave his wife money..
“In order to hold that the property involved was the wife’s separate property and that she could legally sell or give it away, it would have to affirmatively appear (1) That although no divorce had been obtained or no separation of bed and board had been decreed, the wife was at the time she acquired the property, living 'separate- and apart from her husband, and (2) That the money with which the property -was bought and with which the house was built or repaired was earned by the *36 wife while living separate - and apart from her husband.
“The burden of proving these facts was upon the defendant, as the property, having been acquired during the marriage, is presumed to belong to the community. I do not think the evidence offered ;was sufficient to overcome this presumption. There was about as much evidence offered on this question by one side as the other. Suf-ficeth to say, that the evidence .offered by both sides appeared to be of a biased and prejudiced nature and such, as no one could with any degree, of certainty wholly rely upon.- This is why I say that the legal presumption that the property acquired was community property has, not been overcome, by .a preponderance of the evidence offered.”
 A careful review of the transcript reveals the above quoted findings to be eminently correct. The testimony of some of the various witnesses as to when the parties lived together is in hopeless conflict and a review of same here would serve no useful purpose. ' Suffice it to say that there is nothing in the record to indicate manifest error in the factual findings of the trial judge and this’ being true the legal presumption of the property belonging to the community, the purported sale was, as held by the trial judge, an absolute nullity. See LSA-Civil Code, Art. 2404; Robinson v. Marks, 211 La. 452, 30 So.2d 200; and Vanzant v. Morgan, La.App., 181 So. 660.
.Having concluded that the purported sale was a nullity by virtue of the fact that the property belonged to the community, the question of whether or not it was simulation need not be considered.’ There remains, however, for determination the defendants’ claim 'for improvements. With respéct’ to 'this, the trial judge held as follows :
-, “As .to defendants’ second alternative, demand the same cannot' be asserted against this, plaintiff. . At best, any claim she has for alleged improvements placed upon the property would have to be asserted in proper proceedings againát the legal representative of the succession of Queen Washington Thomas. In other words, if she was in good faith in buying said property Queen Washington Thomas having warranted, the’ title thereto alone would be responsible for any damages which the defendant may have suffered "or for any expenses she has incurred in the improvement of the property.”
With the above holding we are in full accord.
The- judgment appealed from is, therefore, affirmed except as to Ihat portion thereof relating to the question of simulation upon which we deem it unnecessary to express ourselves.
Judgment affirmed.