NORRIS, Judge.
The plaintiff, American Bank & Trust Co. of Coushatta (“American”) sued several defendants on a promissory note. After two hearings, judgment was rendered in favor of American. One defendant, William Ingram, who signed a continuing guaranty agreement, appeals. For the rea *1213 sons expressed, we reverse in part and render.

Facts

American’s suit was based on a series of promissory notes and chattel mortgages executed by defendant John McDowell and his companies, Enhance Oil & Gas and Dow-Mac Offshore. The latest note, for $276,689, was dated April 20,1984. American had loaned them money to buy equipment for the oil and gas exploration projects. McDowell defaulted and admitted at trial that he owed the money. He and his companies do not appeal the judgment against them.
The basis of the claim against another defendant, Keith Hays, was fraud. Hays was formerly American’s president and CEO; in that capacity he arranged the loans to McDowell and apparently dealt with him extensively. However, he extended credit to McDowell without requiring adequate security; he also acquired an overriding royalty interest in several of McDowell’s leases. In July 1982 he released most of the collateral from the mortgages, including revenues from leases in which he had acquired interest. When confronted with these irregularities, Hays resigned from American and later pled guilty to federal charges of misapplying bank assets, 18 U.S.C.A. § 656. American urged that Hays’s fraud or gross neglect made him solidarily liable with McDowell and the companies. The court cast him in judgment with them, and he does not appeal.
The basis of the claim against the final defendant, appellant William Ingram, was a continuing guaranty agreement dated May 20, 1982, to secure any of McDowell’s debts at American up to $219,796. Ingram answered the petition with general denials and asserted several defenses. His chief contention was that he signed the agreement with an oral understanding that it would not take effect unless Ingram purchased one-half interest in McDowell’s offshore welding company, Dow-Mac, but the contemplated venture never materialized so the guaranty should never have been used. He also pleaded fraud, alleging the doe-ument was “blank” when he signed it. He finally urged that American impaired his position by wrongly releasing the collateral.
When the case came to trial on October 8, 1987, the main issue was the guaranty; Ingram was apparently the only solvent defendant. American introduced a statement showing the current indebtedness of $268,101.47, several mortgages encumbering McDowell’s property, and Ingram’s continuing guaranty agreement, signed and notarized May 20, 1982. American’s chairman of the board, Mr. Almond, testified that when suit was filed, the only collateral remaining was a few items worth $87,000. He had no knowledge of the circumstances surrounding the execution of Ingram’s continuing guaranty agreement.
Ingram testified he did not do business with American. However, he and McDowell met with Hays on one occasion (he could not recall the date) to discuss with him their contemplated partnership in Dow-Mac. Ingram testified that the consideration for the purchase was to be his agreement to assume or guarantee payment of half of McDowell’s obligations; in the event the sale was consummated, the continuing guaranty would have been a convenient means of effecting the consideration. Ingram admitted signing a “blank” document and knowing it was a continuing guaranty, but testified that everyone involved understood it would take effect only if Ingram actually bought 50% of Dow-Mac. This transaction, however, did not go through because Ingram was having marital problems and did not want to “get involved.” He later asked McDowell to have Hays tear up the document.
McDowell also testified. He corroborated that the guaranty was blank when Ingram signed it, that it was contingent on him and Ingram entering a partnership, and that Hays was not to fill it in unless they told him the sale was consummated. McDowell testified that at Ingram’s request, after the deal fell through, he instructed Hays to “take care of the document,” and Hays said he would do so. McDowell denied that Ingram ever gave *1214 him money to pay off the American notes, and stated that he never intended Ingram’s guarantee to be a “major source of collateral.”
The final party to the execution of the guaranty, Hays, was not called to testify. Because of the federal prosecution, he declared that he would merely “take the fifth.”
On October 25, before the trial court ruled, American moved for a new trial, urging that Ingram had committed perjury and that American had discovered new evidence to prove that McDowell and Ingram’s business venture did materialize. The court granted a new trial as to Ingram only.
The “new trial” was February 11, 1988. American’s new evidence consisted of microfilm copies of cashier’s checks and deposit slips from July 1982, about two months after the guaranty was dated. These show that Ingram bought a $15,000 cashier’s check from Planter’s Bank in Haynesville, indorsed it and paid it to McDowell. McDowell used part of these proceeds to buy an oil and gas lease; he deposited the remainder in his account at American. This information was in American’s records at the time of the first trial, but American claimed it was not aware of it until the FBI opened its confidential files on Hays. American argued this payment showed that Ingram and McDowell were in some kind of venture together, such as would justify American in using the guaranty. Both Ingram and McDowell testified that this transaction was an assignment from McDowell to Ingram of a working interest in one gas well only and not the Dow-Mac sale they had contemplated. Ingram introduced copies of assignments of oil and gas leases that corroborated this explanation. A third party in the transaction, Roger Young, also testified that this was a sale involving one well only.
In written reasons for judgment, the trial court found the continuing guaranty was valid, noting the general rule that testimonial evidence is not admissible to vary the terms of a clear and unambiguous contract. Nevertheless considering the testimony of Ingram and McDowell, the court apparently accepted that there was an oral understanding not to use the guaranty “absent some business dealing between McDowell and [Ingram].” The court found the checks and deposit slips were evidence that business dealings had taken place, “at least on the face of things,” that would justify American in using the guaranty. The court did not find fraud on American’s part.
Ingram has appealed, urging six assignments of error. We find merit in the argument advanced by assignments three and four, which contend in essence that the trial court erred in its findings as to the oral agreement. We therefore reverse the judgment as to the appellant, William Ingram.

Discussion

At the outset we note the contentions of assignments one and two, as they have some bearing on the principal issue. By these assignments Ingram claims the court erred in granting a motion for new trial before there was a judgment in the first trial. The code articles pertaining to new trial presuppose a prior judgment. See LSA-C.C.P. arts. 1971, 1974. However, a premature motion for new trial may be construed as a motion to reopen the case for additional evidence. Thompson v. Bullock, 236 So.2d 892 (La.App. 3d Cir. 1970), writ denied 256 La. 894, 240 So.2d 231 (1970), and citations therein; Hudson v. Comfort Center of Monroe, 316 So.2d 488 (La.App. 2d Cir.1975). Though the trial court granted a “new trial,” the action was permissible as an order to reopen the evidence. The court’s decision to reopen for additional evidence is discretionary and not disturbed absent a clear abuse of discretion. LSA-C.C.P. arts. 1631, 1632; Succ. of Lefort, 139 La. 51, 71 So. 215 (1916); Cummings v. Wafer, 499 So.2d 184 (La.App. 2d Cir.1986).
The court’s purpose in granting the “new trial,” or reopening the case for additional evidence, is clear. American’s petition was based on a contract which made no reference to any suspensive condition. *1215 An obligation is subject to a suspensive condition if the obligation may not be enforced until an uncertain event occurs. LSA-C.C. art. 1767. Such an obligation has no effect until the condition is satisfied. Shepard v. Calloway, 441 So.2d 488 (La.App. 2d Cir.1983), and citations therein; Pertuit v. Weinberg, 134 So.2d 652 (La.App. 4th Cir.1961), writ denied (not reported, La.1962).
Ingram offered testimonial evidence to prove the content of an oral agreement under which there was a suspensive condition, and that the condition never occurred. American neither objected to, nor contradicted, this evidence. However, American moved to present evidence to rebut Ingram’s version by showing that the alleged condition did occur. The court obviously wanted to hear all the facts pertaining to the oral agreement and the suspensive condition. Reopening the case for further evidence was not an abuse of discretion.
The court’s determination to hear all the evidence about the oral agreement will bear on the correctness of the findings he drew from that evidence on the subject of the suspensive condition.
The trial court’s first finding is unassailable. American produced a document which is clearly a continuing guaranty agreement. It is express and in writing. LSA-C.C. art. 3038 (former art. 3039). It appears to be in authentic form, with two witnesses and notarized, though there is also an acknowledgment by one of the witnesses before the same notary. It bears a signature which Ingram acknowledged as his own. The court concluded the guaranty appeared valid on its face, and this is not plainly wrong.
Ordinarily testimonial evidence is not admissible to negate or vary the contents of a valid authentic act or an act under private signature. Nevertheless, such evidence may be admitted in the interest of justice to prove circumstances such as a vice of consent or modification by a subsequent and valid oral agreement. LSA-C.C. art. 1848; American Bank & Trust Co. in Monroe v. Vinson, 528 So.2d 693 (La.App. 2d Cir.1988). Testimonial evidence may also be offered to prove that a written agreement was only part of a broader, oral agreement, such as a suspen-sive condition that never occurred. Robinson v. Marks, 211 La. 452, 30 So.2d 200 (1947); Gulf State Fin. Corp. v. Airline Auto Sales, 248 La. 591, 181 So.2d 36 (1965); Comment, Parol Evidence in Louisiana, 47 Tul.L.Rev. 381, 386 (1973).
As noted, the trial court considered testimonial evidence about the alleged sus-pensive condition. Both Ingram and McDowell stated the guaranty was contingent on Ingram buying half of Dow-Mac. Both said that Hays knew this. We note that their testimony, which went beyond the four corners of the guaranty agreement, was admitted without objection from American. The failure to object validates in large measure the court’s decision to receive the evidence. See First Nat’l Bank of Ruston v. Mercer, 448 So.2d 1369 (La.App. 2d Cir.1984). Furthermore, American moved for new trial to present evidence not to negate the oral agreement, but to prove the condition occurred. The thrust of American’s case was to admit and rely on the fulfillment of the oral condition. Not even in rebuttal did American attempt to rehabilitate the guaranty, such as by calling the notary or witnesses who, according to the instrument, were present at the execution and presumably were under American’s control. The trial court accepted that the guaranty was dependent on an oral condition and we cannot find this plainly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
The court’s third finding, however, is impossible to square with the evidence. Having accepted that both the written guaranty depended on the oral agreement, the court concluded that the suspensive condition created by oral agreement did in fact occur. The evidence shows, without contradiction, that the proposed sale of one-half interest in Dow-Mac did not occur.
The court relied on the cashier’s checks and deposit slips to prove that the contemplated business venture involving McDowell’s offshore welding company was con *1216 summated. However, both men explained that these represented an assignment of a working interest in one well only. The written assignment is contemporaneous with the cashier’s check. Notably, it provides that the interest sold therein does not include any interest in any other well or surrounding properties.
Their explanation is further corroborated by the relatively small nature of the transaction, only $15,000. This is in contrast with the apparent size of Dow-Mac, a company whose worth was not documented in the evidence but it owned assets and equipment mortgaged at $276,689. Incredibly, it is the only transaction that American could adduce in its effort to prove the fulfillment of the condition.
The time frame of the events is also inconsistent. The “dealing” which, according to American, activated the oral condition did not occur until July 16. If this “dealing” was the consummation of the proposed venture, then the guaranty should have been dated and completed at the same time as, or slightly after, the transaction. However, the guaranty was dated almost two months earlier. We do not see how this small and untimely transaction, about which American had no knowledge until October 1987, could justify activating the oral agreement that was proved.
Under the circumstances the trial court was plainly wrong to find that the cashier’s check and deposit slip from July 1982 proved that Ingram bought an interest in Dow-Mac.
We recognize the trial court’s very great discretion in assessing the credibility of witnesses. Canter v. Koehring Co., 283 So.2d 716 (La.1973). In the instant case the trial court did not dismiss Ingram and McDowell’s testimony, though this would have been permissible given Ingram’s interest in testifying as he did. Rather, the court was persuaded by their testimony and accepted that the guaranty was contingent on the oral agreement. In the absence of a reason to reject it, their further testimony as to the nature of the agreement and the failure of the suspensive condition does not strike us as any less credible. Ingram’s rendition of events is supported by testimonial and documentary evidence and is corroborated by circumstantial facts. It is not contradicted by American. Under the circumstances we are constrained to hold the trial court committed manifest error in finding that the suspen-sive condition occurred.
The continuing guaranty agreement was therefore without effect and the trial court was in error to enforce it. The judgment is reversed and the case dismissed as to appellant, William Ingram, at American Bank’s costs.
REVERSED IN PART AND RENDERED.