655 So.2d 1371 (1995)
STATE of Louisiana, Through DEPARTMENT OF SOCIAL SERVICES SUPPORT ENFORCEMENT SERVICES in the Interest of Laurie BORDELON and Sarah E. Bordelon
v.
Donald Joseph GUICHARD.
No. 94 CA 1795.
Court of Appeal of Louisiana, First Circuit.
May 5, 1995.
*1373 Willie E. Broome, Amite, for plaintiff/appellee Support Enforcement Services.
S. Guy deLaup, Metairie, for defendant/appellant Donald Joseph Guichard.
*1374 Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment in an action filed by the State to establish paternity and support obligation.

FACTS
On July 10, 1991, the State of Louisiana, through the Department of Social Services, Support Enforcement Services (the Department), filed a petition to establish paternity and support obligation against Donald Joseph Guichard, Sr. The petition alleged that the minor child, Sarah E. Bordelon, was conceived and born of the sexual relationship between Guichard and Laurie Bordelon. The petition also alleged that Laurie Bordelon was receiving AFDC (aid to families with dependent children) benefits on behalf of Sarah E. Bordelon and that the Department was, therefore, entitled to bring the action pursuant to LSA-R.S. 46:236.1. The petition requested child support and medical coverage for Sarah E. Bordelon.
On January 21, 1992, Guichard filed an answer to the petition and requested that blood tests be conducted to prove the issue of paternity. On February 13, 1992, the Department and Guichard filed a joint motion and order for paternity blood testing. The tests were performed on February 25, 1992. On April 3, 1992, in accordance with LSA-R.S. 9:397.3,[1] the Department filed a "Notice of Filing" of the February 25, 1992, blood test results, a certificate of analysis, a paternity summary, and an affidavit and chain of custody. The probability of paternity was listed as 99.60%.
On May 21, 1992, Guichard filed a "Rule to Show Cause for DNA Re-Testing." The court subsequently ordered that the tests be re-conducted on July 1, 1992. On October 2, 1992, the Department filed a "Notice of Filing" with affidavit and chain of custody of the July 1, 1992, blood test results, as well as paternity test results. The probability of paternity was listed as 99.75%.
At a June 18, 1993, hearing, Guichard raised the peremptory exception pleading the objection of failure to join an indispensable party. Guichard contended that Robert Michael Bordelon, Sarah E. Bordelon's legal father, was an indispensable party because he was married to Laurie Bordelon at the time of Sarah's conception and birth. The trial court subsequently overruled Guichard's exception, finding that Robert Bordelon was not an indispensable party to the action.[2]
On June 16, 1993, Guichard filed a third party demand against his son, Donald Joseph Guichard, Jr., requesting that he submit to blood tests. However, the record indicates that the third party defendant was not served with process.
On February 11, 1994, trial on the merits was held. On April 12, 1994, the trial court rendered judgment against Guichard, declaring him to be the biological father of Sarah *1375 E. Bordelon. Guichard was ordered to reimburse the Department for costs of the blood tests administered on February 25, 1992, and was cast with all costs of the proceedings. The judgment was signed on April 18, 1994.[3]
On May 2, 1994, Guichard filed a motion for new trial, which was denied by the trial court on May 10, 1994. Guichard appealed from the adverse judgment, assigning the following specifications of error:
1. The trial court erred in denying defendant's request for paternity blood testing of the legal father of the minor child, Robert Michael Bordelon, and defendant's son, Donald Joseph Guichard, Jr.
2. The trial court erred in failing to grant the motion to dismiss made in favor of defendant after the State had rested its case in chief.
3. The trial court erred in refusing to admit the deposition of the minor child, Sarah E. Bordelon.
4. The trial court erred in admitting the D.N.A. test results of AUG, Inc. (February 25, 1992, tests)
5. The trial court erred in admitting the D.N.A. test results of GEN Test Laboratories, Inc. (July 1, 1992, tests)
6. The trial court erred in finding that the State of Louisiana carried its burden of proof in demonstrating that the defendant was the biological father of the minor child.

INDISPENSABLE PARTY
Guichard contends that the trial court erred in overruling his peremptory exception pleading the objection of failure to join an indispensable party. Guichard reasons that Robert Bordelon, legal father of Sarah E. Bordelon, should have been joined in the proceedings and required to submit to blood tests.
LSA-C.C.P. art. 641 addresses joinder of indispensable parties and provides as follows:
Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
No adjudication of an action can be made unless all indispensable parties are joined therein.
Parties should be deemed "indispensable" only when absolutely necessary to protect substantial rights, and only after facts clearly establish that no complete and equitable adjudication of controversy can be made in a party's absence. A party is not "indispensable" merely because his presence would aid in the adjudication of the controversy. Garlick v. Succession of Garcia, 606 So.2d 36, 37 (La.App. 4th Cir.1992).
LSA-R.S. 46:236.1 F(1) sets forth the Department's right to bring a direct action against an alleged biological parent for support of a minor child and provides, in pertinent part, as follows:
The department, except when it is not in the best interest of the child, may without the necessity of written assignment, subrogation, tutorship proceedings, or divorce proceedings, take direct civil action, including actions to establish filiation against an alleged biological parent notwithstanding the existence of a legal presumption that another person is the parent of the child solely for the purpose of fulfilling its responsibility under this Section, in any court of competent jurisdiction, to obtain an order, judgment, or agreement of support against the responsible person in any case in which the department is providing services under this Section.... A separate and distinct cause of action in favor of the department is hereby created, and suits brought under this provision need not be ancillary to or dependent upon any other legal proceeding. (emphasis added.)
*1376 Thus, although one man is presumed to be the father of the child under LSA-C.C. art. 184,[4] the Department may, nonetheless, bring a direct action against an alleged biological father for support purposes. In Smith v. Cole, 553 So.2d 847, 854-55 (La. 1989), the Louisiana Supreme Court stated:
The Article 184 presumption will not be extended beyond its useful sphere. The presumption was intended to protect innocent children from the stigma attached to illegitimacy and to prevent case-by-case determinations of paternity. It was not intended to shield biological fathers from their support obligations....
* * * * * *
In summary, Louisiana law may provide the presumption that the husband of the mother is the legal father of her child while it recognizes a biological father's actual paternity. When the presumptive father does not timely disavow paternity, he becomes the legal father. A filiation action brought on behalf of the child, then, merely establishes the biological fact of paternity. The filiation action does not bastardize the child or otherwise affect the child's legitimacy status. The result here is that the biological father and the mother share the support obligations of the child. (emphasis added.)
Based on the foregoing, it is clear that Robert Bordelon is not an indispensable party to the Department's action against Guichard to establish his biological relationship with Sarah E. Bordelon. As Sarah's presumed legal father, Robert Bordelon's interests in the subject matter are not so interrelated, and would not be so directly affected by a judgment against Guichard, that a complete and equitable adjudication of the controversy cannot be made unless he is joined in the action. The present action establishes the biological father for support purposes, and the otherwise legitimate status of the child is not affected. Therefore, the trial court did not err in overruling Guichard's peremptory exception pleading the objection of failure to join an indispensable party.

INVOLUNTARY DISMISSAL
Guichard contends that the trial court erred in denying his motion for involuntary dismissal at the close of plaintiff's case. Guichard reasons that, in its case-in-chief, the Department failed to offer any evidence to prove Guichard's paternity.
LSA-C.C.P. art. 1672 B provides as follows:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In a non-jury case, the appropriate standard for the trial court's determination of a motion to dismiss is whether the plaintiff has presented sufficient evidence on his case-in-chief to establish his claim by a preponderance of the evidence. Hutzler v. Cole, 93-0486 (La.App. 1st Cir. 3/11/94), 633 So.2d 1319, 1323, writ denied, 94-0850 (5/13/94), 637 So.2d 1070; Shafer v. State, Department of Transportation and Development, 590 So.2d 639, 642 (La.App. 3rd Cir.1991); Brown v. E.A. Conway Memorial Hospital, 588 So.2d 1295, 1298 (La.App. 2nd Cir.1991). In making its determination on such a motion, the trial court is not required to review the evidence in the light most favorable to the plaintiff as is done when a motion for directed verdict is filed in a jury case. Hutzler v. Cole, 633 So.2d at 1323-24; Shafer v. State, Department of Transportation and, *1377 Development, 590 So.2d at 642. Unlike the motion for a directed verdict in a jury trial, a motion for involuntary dismissal pursuant to LSA-C.C.P. art. 1672 B requires a judge to evaluate the evidence and render a decision based upon a preponderance of the evidence without any special inferences in favor of the opponent to the motion. Hutzler v. Cole, 633 So.2d at 1324; Poland v. Glenn, 623 So.2d 227, 230 (La.App. 2nd Cir.), writ denied, 629 So.2d 1171 (La.1993); Barnes v. Thames, 578 So.2d 1155, 1164 (La.App. 1st Cir.), writs denied, 577 So.2d 1009 (La.1991); Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366, 369 (La.App. 2nd Cir.1988). In other words, on a motion for involuntary dismissal, the trial judge is only required to weigh and evaluate all of the evidence presented up to that point and grant a dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence. Hutzler v. Cole, 633 So.2d at 1324; Shafer v. State, Department of Transportation and Development, 590 So.2d at 642.
Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Hutzler v. Cole, 633 So.2d at 1324; Barnes v. Thames, 578 So.2d at 1164; Fuller v. Wal-Mart Stores, Inc., 519 So.2d at 369. Although petitioners are not entitled to any special inferences in their favor, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. Fuller v. Wal-Mart Stores, Inc., 519 So.2d at 369.
For an appellate court to reverse a trial court's factual finding, it must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Thus, the reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993); Rosell v. ESCO, 549 So.2d 840, 844 (La.1989). The issue to be resolved is not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the fact finder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
In the instant case, the Department called two witnesses to testify during its case-in-chief: Laurie Bordelon and her mother, Pamela Delamore. Laurie testified that, at the time that her daughter, Sarah, was conceived in May of 1984, she was involved in a sexual relationship with Guichard and that she was not sexually involved with anyone else during that time period, including her husband, Robert Bordelon. According to Laurie, she had been living with Guichard prior to May of 1984. Laurie also testified that her daughter, Sarah, resembles Guichard.
Pamela Delamore testified that her daughter, Laurie, began dating Guichard in March of 1984.[5] In August or September of 1984, Laurie told Delamore that she was pregnant with Guichard's child. Delamore indicated that Laurie had been with no man other than Guichard during 1984. According to Delamore, Guichard was present at the hospital when Sarah was born, and Sarah resembles Guichard.
A review of the testimony presented by the Department indicates that there is a *1378 reasonable factual basis for the trial court's determination that the Department presented sufficient evidence on its case-in-chief to establish Guichard's paternity by a preponderance of the evidence. Therefore, that finding is not manifestly erroneous, and the trial court did not err in denying Guichard's motion for involuntary dismissal at the close of the Department's case-in-chief.

EXCLUDED DEPOSITION TESTIMONY
Guichard contends that the trial court erred in refusing to admit the deposition of seven-year-old Sarah E. Bordelon at the trial of this matter. Guichard contends that he offered the deposition testimony for the purpose of impeaching Laurie Bordelon.
LSA-C.C.P. art. 1450 addresses the use of depositions and provides, in pertinent part, as follows:
A. At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the Louisiana Code of Evidence applied as though the witnesses were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any of the following provisions:
* * * * *
(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds:
(a) That the witness is unavailable;
(b) That the witness resides at a distance greater than one hundred miles from the place of trial or hearing or is out of the state, unless it appears that the absence of the witness was procured by the party offering the deposition; or
(c) Upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.
The trial court has much discretion in determining whether to allow the use of deposition testimony at trial, and its decision will not be disturbed upon review in the absence of an abuse of that discretion. See Dodson v. Community Blood Center of Louisiana, Inc., 633 So.2d 252, 257 (La.App. 1st Cir.1993), writs denied, 93-3158, 93-3174 (La. 3/18/94), 634 So.2d 850, 851; DeRosier v. South Louisiana Contractors, 583 So.2d 531, 539 (La.App. 3rd Cir.), writ denied, 587 So.2d 700 (La.1991).
We have reviewed the proffered deposition testimony of Sarah E. Bordelon and find that the trial court did not abuse its much discretion in refusing to allow it into evidence. This seven-year-old child could not and did not testify as to any relevant information concerning the sexual relationship between her mother and Guichard.[6] The assignment of error is without merit.

RE-OPENING OF THE CASE
Guichard contends that the trial court erred in allowing the case to be re-opened after the Department presented its case-in-chief.
The trial judge has great discretion in the manner in which proceedings are conducted before his court, and it is only upon a showing of gross abuse of discretion that appellate courts have intervened. Harris v. West Carroll Parish School Board, 605 So.2d 610, 612 (La.App. 2nd Cir.), writ denied, 609 So.2d 255 (La.1992).
The decision of whether to reopen a case to allow additional evidence is within the discretion of the trial court. The trial court's decision should be reversed only if it is a *1379 clear abuse of discretion. Malbrough v. Wallace, 594 So.2d 428, 439 (La.App. 1st Cir. 1991), writ denied, 596 So.2d 196 (La.1992); American Bank & Trust Company of Coushatta v. McDowell, 545 So.2d 1211, 1214 (La. App. 2nd Cir.1989); Oster v. City of New Orleans, 528 So.2d 792, 794 (La.App. 4th Cir.), writ denied, 533 So.2d 21 (La.1988).
The objective of our judicial system is to render justice between litigants based upon the merits of the controversy. Nevertheless, the trial court should permit litigants to place before it all facts bearing on the relevant issues before it. State, Department of Transportation & Development v. Latiolais, 613 So.2d 1009, 1012 (La.App. 3rd Cir.), writ denied, 619 So.2d 545 (La.1993).
In the instant case, the record reveals that, at the conclusion of the Department's case-in-chief, Guichard entered an objection as to the court's consideration of the blood test results which had been filed into the record because the tests were not offered or introduced into evidence by the Department during its case-in-chief. The trial court took the matter under advisement and ordered the parties to submit memoranda on the issue. The court held the trial open until the continued date of March 11, 1994.
On March 11, 1994, a hearing was held on the blood test issue. The Department argued that the trial had not ended, as the defense had not put on any evidence. Alternatively, the Department argued that the court should re-open the matter for admission of the blood test results.[7]
The court indicated that it had a "right to hear everything pertinent in this matter," and went on to state as follows:
And I either have a right to continue the trial as I was doing at the time. Or if youall want to call it a reopening of the matter, well, then that is what we are going to do. We are going to reopen the matter because I feel that the Court's job is to do justice to all parties.
The Department then introduced into evidence the February 25, 1992, test results, revealing a 99.60% probability of paternity. With regard to the results of the second test (which had been ordered at Guichard's request), the Department called Dr. Sudhir Sinha to testify. Dr. Sinha identified the affidavit of blood testing and attached results, which revealed a 99.75% probability of paternity.
We have thoroughly reviewed the trial transcript as well as the transcript of the March 11, 1994, hearing and conclude that the trial court did not abuse its discretion in re-opening the matter for the taking of additional evidence. It was within the trial court's much discretion to obtain all pertinent evidence prior to making a paternity determination. This assignment of error lacks merit.

PROOF OF PATERNITY
Guichard contends that the trial court erred in finding that the Department satisfied its burden of proof with regard to whether Guichard is the biological father of Sarah E. Bordelon.
LSA-C.C. art. 209 A provides that a child, who is not entitled to legitimate filiation, must prove filiation as to an alleged living parent by a preponderance of the evidence in a civil proceeding. State, Department of Social Services v. Pierre, 93-834 (La.App. 3rd Cir. 3/2/94), 634 So.2d 1224, 1225. Proof by a preponderance of the evidence means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Hutzler v. Cole, 633 So.2d at 1324. Although alone insufficient to prove paternity, scientific testing provides persuasive and objective evidence that can help establish *1380 paternity by a preponderance of the evidence. Litton v. Litton, 624 So.2d 472, 475 (La.App. 2nd Cir.1993), writ denied, 93-2657 (La. 1/2/94), 631 So.2d 456. Proof of paternity is a factual question, and a trial court's determination of the issue should not be disturbed absent manifest error. Litton v. Litton, 624 So.2d at 475.
The record reveals that Laurie Bordelon testified that she began living with Guichard in March of 1984 and that her daughter, Sarah, was conceived in May of 1984. According to Laurie, she was having a sexual relationship with no one other than Guichard during the time of conception. Laurie indicated that she carried Sarah full-term, giving birth to her in February of 1985. Laurie stated that Sarah resembles Guichard.
Pamela Delamore, Laurie Bordelon's mother, testified that Laurie began dating Guichard in March of 1984. In August or September of 1984, Laurie told Delamore that she was pregnant with Guichard's child. According to Delamore, Laurie was with no other man, besides Guichard, during 1984. Delamore indicated that Guichard was present at the hospital when Sarah was born and that Sarah resembles Guichard.
The first set of blood tests, which were conducted on February 25, 1992, reveal a 99.60% probability of paternity. The second set of blood tests, conducted on July 1, 1992, at Guichard's request, reveal a 99.75% probability of paternity.
The record also contains the deposition of Dr. Grant Simmons, urologist, along with the results of a semen analysis conducted on Guichard. Simmons explained that a semen analysis is performed for the purpose of evaluating the fertility of a patient. Dr. Simmons indicated that the first analysis was conducted on October 17, 1984, and it revealed a sperm count of 2,600,000 per milliliter, which is a very low count. The analysis also indicated that there was no sperm motility. Dr. Simmons explained that motility concerns the ability of a sperm to swim within the seminal fluid and stated that if the motility is low, the ability to impregnate is unlikely. Dr. Simmons testified that a second semen analysis was conducted on May 11, 1992, showing a sperm concentration of 13,800,000 sperm per milliliter, which is quite low, and no sperm motility. Dr. Simmons indicated that a normal sperm count ranges from 60,000,000 to 150,000,000. Dr. Simmons opined that, based on Guichard's history and the sperm analyses, it was "very unlikely, extremely unlikely" for Guichard to have fathered a child at the time of Sarah's conception. He stated that, generally, a sperm count below 20,000,000 is "unlikely" to cause conception, and a motility below 50% is considered virtually sterile.
On cross-examination Dr. Simmons acknowledged that only one sperm is required for conception and that Guichard had 2,600,000 in the first analysis and 13,800,000 in the second analysis. Dr. Simmons also indicated that he did not conduct the semen analyses personally. In fact, for the first analysis, he stated that Guichard collected the specimen and subsequently brought it to Slidell Memorial Hospital. Dr. Simmons did not know how much time had elapsed between the time the semen was collected and examined, and no controls or chain of custody were in place to ensure that the semen was that of Guichard. Dr. Simmons testified that he knows of no test which could determine whether a specimen of semen belongs to a particular patient.
We have thoroughly reviewed the entire record in this matter, and, based on the evidence as a whole, we conclude that the trial court did not err in finding that the Department proved Guichard's paternity by a preponderance of the evidence. Therefore, this assignment of error lacks merit.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed at Guichard's costs.
AFFIRMED.
NOTES
[1] LSA-R.S. 9:397.3 addresses the admissibility and effect of blood test results and provides, in pertinent part, as follows:

A. A written report of the results of the initial testing, certified by a sworn affidavit by the expert who supervised the tests, shall be filed in the suit record. A notice that the report has been filed shall be mailed by certified mail to all parties by the clerk of court or shall be served in accordance with Code of Civil Procedure Article 1314. A party may challenge the testing procedure within thirty days of the date of receipt or service of the notice.
B. If the court finds there has been a procedural error in the administration of the tests, the court shall order an additional test.... If there is no timely challenge to the testing procedure or if the court finds there has been no procedural error in the testing procedure, the certified report shall be admitted in evidence at trial as prima facie proof of its contents, provided that the party against whom the report is sought to be used may summon and examine those making the original of the report as witnesses under cross-examination.
C. Any additional testing ordered by the court pursuant to this Part shall be proved by the testimony of the expert.
[2] The trial court rendered judgment on the exception on November 9, 1993.
[3] By judgment dated June 27, 1994, Guichard was ordered to pay child support and medical expenses on behalf of Sarah E. Bordelon.
[4] LSA-C.C. art. 184 provides that "[t]he husband of the mother is presumed to be the father of all children born or conceived during the marriage."
[5] Laurie and Guichard had previously dated, but had broken up.
[6] The proffered testimony indicates that Laurie Bordelon told Sarah that her father's name is "Don." The remainder of the testimony reveals that the child was confused and could not recall any other name which had supposedly been given as her father's.
[7] The Department indicated that, with regard to the first test, a proper foundation had been laid at the trial with the testimony of Laurie Bordelon. As to the results of the second test, the Department argued that the only way to get the results into evidence was through the testimony of the doctor who performed the test, Dr. Sudhir Sinha.