590 So.2d 639 (1991)
Don A. SHAFER, Plaintiff-Appellant,
v.
STATE of Louisiana, Through the DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT, et al., Defendants-Appellees.
No. 90-406.
Court of Appeal of Louisiana, Third Circuit.
November 13, 1991.
*640 Touchston & Wilson, David M. Touchstone, Shreveport, for plaintiff-appellant.
Stafford, Stewart & Potter, Kay Michiels, Alexandria, for defendants-appellees.
Before DOMENGEAUX, C.J., and STOKER and YELVERTON, JJ.
YELVERTON, Judge.
This lawsuit arose out of a one-car accident which occurred on an unopened portion of Interstate 49 while it was under construction. The plaintiff, Don A. Shafer, *641 sued the State of Louisiana, Through the Department of Transportation and Development (State), and two construction companies working on the project. The two construction companies, Keiwit Eastern and LUHR Brothers, Inc., were later dismissed on motions for summary judgment. At the trial, after Shafer presented his case, the State moved for a judgment of dismissal. The trial judge granted the motion, finding that the plaintiff's evidence revealed that the State was not at fault. The trial court dismissed the plaintiff's claim. Plaintiff now appeals contending that the trial court erred in granting a judgment of dismissal.
On the morning of October 3, 1986, Shafer entered an unopened portion of an interstate highway construction project at the junction of Louisiana Highway 174 and I-49. He did this by driving his pickup through several orange and white barrels and a road closed sign at the northbound entrance ramp onto I-49. Plaintiff went north on I-49. At about 6:30 a.m., he ran off the end of the paved surface, wrecking his truck. At the time of the accident it was just breaking daylight and there was a light rain. He was driving at about 45 m.p.h. He saw that the road was about to end, and put on his brakes. By the time he went off the end of the road, his speed was reduced to 30 m.p.h.
The plaintiff worked for LUHR Brothers, Inc., as a heavy equipment operator, from the third week in July of 1986 until the week ending on August 28, 1986, when he was laid off for being late for work. After going back to the job site three or four times attempting to regain employment, the plaintiff was rehired the week of September 4, 1986, and worked until the week ending on September 25, 1986, when he was again laid off, this time because no further work was available. The accident happened one week later, on October 3, 1986, when he was driving to the job site in an attempt to regain employment. The plaintiff was not employed by LUHR Brothers or the State on the day of the accident.
Having worked on the construction for two months before the accident, Shafer was aware that the interstate was closed to the public, knew that the interstate abruptly ended about three miles from the road closed sign, and knew also that there were no further signs or barricades posted at the end of the project to show where the road actually ended. The plaintiff testified that he used that route daily to go to work prior to his last layoff.
Most of the construction workers and state employees used I-49, as a matter of convenience, to get to the job site. The alternative routes were narrow and curved gravel roads requiring slower travel. Right at the point where the highway terminated, there was a temporary exit road used by workers to leave the highway and get to their job sites. Shafer had had no difficulty negotiating this route every morning that he went to work. When asked at the trial to explain why, after repeated successful daily trips along this route, he had an accident this time, he testified that he had been using a pile of dirt as a reference point to inform him that the end of the roadway was near. However, this dirt pile had been removed sometime during the week before the accident. He was following the tail lights of four or five other cars down the I-49 project that morning. He was on the northbound lanes of I-49. He saw some tail lights on the southbound lanes, going north, which confused him and made him wonder how they got there. Nevertheless, he explained that the reason he had this accident was because the dirt pile that he used as a point of reference was gone.
On these facts the State moved for a dismissal of the action. La.C.C.P. art. 1672(B), the authority for such a motion, states:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then *642 determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In non-jury cases, the appropriate standard for the trial court's determination of a motion to dismiss is whether the plaintiff has presented sufficient evidence on his case-in-chief to establish his claim by a preponderance of the evidence. In making its determination on such a motion, the trial court is not required to review the evidence in the light most favorable to the plaintiff as is done when a motion for directed verdict is filed in a jury case. Egle v. Kidd, 442 So.2d 669 (La.App. 1st Cir.1983). The judge is only required to weigh and evaluate all of the evidence presented up to that point and grant a dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence. Bradley v. Hunter, 413 So.2d 674 (La.App. 3rd Cir. 1982), writ denied, 415 So.2d 952 (La.1982). A dismissal based on La.C.C.P. art. 1672(B) should not be reversed in the absence of manifest error. Smith v. Vernon Parish School Bd., 442 So.2d 1319 (La.App. 3rd Cir.1983), writ denied, 445 So.2d 451 (La. 1984).
In granting the judgment of dismissal, the trial judge based his decision entirely on a finding of the plaintiff's fault. Among other findings, the trial judge pointed out in reasons for judgment that the plaintiff knew that I-49 was under construction and incomplete, knew there were no signs or barricades at the end of the project to warn him where the construction ended, and knew that construction changes would occur during the few days after he was laid off.
On this appeal Shafer presents but one assignment of error. He urges that it was error for the trial court to bar his recovery altogether merely because there might have been some negligence on his part. We interpret this assignment to advance the argument that some fault, quantified, should be found on the part of the State. The trial court made a finding of "absolutely no fault" on the part of the State, but did not explain that finding. The trial court found the plaintiff "solely responsible and negligent for causing the accident." Accordingly, in order to give consideration to appellant's assignment of error, we will apply duty-risk principles to determine whether the State, on the facts of this case, may be guilty of some quantifiable comparative fault.
Shafer's complaint is that the State owed him the duty of providing him some visually cognizable notice at the precise point where the roadway ended, and that it failed to provide such a notice. Applying the duty-risk analysis, as most recently explained by our Supreme Court in Roberts v. Benoit, 586 So.2d 131 (La.1991), our first inquiry is to answer the bare question of whether the failure to provide such a warning was a cause-in-fact of the accident. We readily conclude that it was. Another barricade at the end of the road, sufficient in size and illumination to attract the attention of a driver in sufficient time to stop, would probably have prevented this accident. The failure to put up such a warning thus meets the "but for" or "substantial factor" tests, and this failure was a cause-in-fact of Shafer's injuries.
The next inquiry is duty, i.e., whether the State owed a duty to motorists to warn at the precise location of the end of the road. In approaching a resolution of this question, we will utilize the standard of care owed by the State in a construction area. It is true in this case that the road was closed to the traveling public, but it is also true that it was used regularly by personnel, beyond the road closed sign, to get to work. While this use may not have been with the State's express permission, it appears it enjoyed at least the State's tacit permission. In construction areas, the standard of care owed to travelers is somewhat lower, but there is nevertheless a duty to warn motorists of dangerous construction conditions. Golden v. Madden Contracting Co., Inc., 469 So.2d 1039 (La. App. 2d Cir.), writ denied 475 So.2d 363 (La.1985). An unheralded, abrupt termination of the end of pavement, followed by a deep ditch, is a dangerous construction *643 condition. When motorists are permitted to be in construction zones, specific traffic directives are required in order to give adequate warning of the nature of hazards that may be encountered in the construction zone. Stephens v. State, through Dept. of Trans., 440 So.2d 920 (La.App. 2d Cir.1983), writ denied 443 So.2d 1119 (La. 1984). Therefore, there exists some jurisprudential law to support plaintiff's claim that the State owed a duty to travelers to provide a specific notice that the road terminated. In other words, the State owed a duty to protect certain persons under certain circumstances from this risk.
The State violated its duty in this case. Except for the road closed sign three miles earlier, there was no specific warning provided by the State that the paved surface of northbound I-49 would come to an abrupt termination when and where it did. In fact, there were no signs at all, anywhere, informing any motorist of the dangerous condition of the termination of the highway.
It is in the scope of protection of this duty where plaintiff loses his case. The rule that the State owes a duty in construction zones to advise motorists of unusual hazards was not intended to protect this plaintiff from this risk on this set of facts.
It is not easy to associate the plaintiff's injuries with the State's conduct. Assuming the State knew about and countenanced Shafer's use of the completed I-49 to get to work, it must also be assumed that the State knew that Shafer had safely negotiated the route every morning for two months. Shafer knew exactly where the end of the road was. It was his decision to use a pile of dirt as his "point of reference." He admitted that he knew that the terrain features changed regularly in the construction area. The removal of the dirt pile was a cause of the accident. Surely it is asking too much that the removal of the dirt pile ought to have been accompanied by a DOTD warning to plaintiff that a terrain feature had changed. If the scope of protection were otherwise, as to a person as knowledgeable of the physical terrain features as was plaintiff, the State could avoid liability only by warning of every danger in the construction zone, and moreover, by giving additional notice of every change in physical terrain features in the construction zone. To be liable to this plaintiff, the State would have to become the insurer of the safety of every driver on a highway construction project. There would be no limit to the State's liability for the consequences of its substandard conduct. The risk that a driver who knew that the road terminated, and knew exactly the location of that termination, would run off the end of the road and be injured, because the State had moved a pile of dirt that the driver had previously used as a "point of reference," is outside the ambit of protection contemplated by the State's duty to specifically warn travelers of dangerous construction conditions.
The judgment of the trial court is affirmed at appellant's costs.
AFFIRMED.
STOKER, J., concurs and assigns written reasons.
STOKER, Judge, concurring.
I fully agree with the majority's rejection of the plaintiff's claims against the State. However, I am not persuaded that the State owed a duty to anyone to mark the end of the finished but unopened portion of the highway. In any event, I agree that the State owed no duty to the plaintiff in this case.