696 So.2d 681 (1997)
Kerney H. TYLER
v.
OUR LADY OF THE LAKE HOSPITAL, INC., City of Baton Rouge, Parish of East Baton Rouge and XYZ Insurance Company.
No. 96 CA 1750.
Court of Appeal of Louisiana, First Circuit.
June 20, 1997.
*682 D. Blayne Honeycutt, Denham Springs, for Plaintiff/Appellant Kerney Tyler.
T. MacDougall Womack, Baton Rouge, for Defendant/Appellee, Our Lady of the Lake Hospital, Inc., et al.
Stephen R. Wilson, Baton Rouge, for Defendant, City of Baton Rouge.
Before CARTER, LeBLANC and PARRO, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment, granting a motion for involuntary dismissal.

*683 FACTS

Our Lady of the Lake Hospital (OLOL) is located at the corner of Essen Lane and Hennessy Boulevard in Baton Rouge, Louisiana. OLOL's ground-level parking lot is located across the street from OLOL on Hennessy Boulevard, which is a four-lane avenue with a neutral ground median, dividing the four lanes of traffic. Marked pedestrian cross-walks are located on Hennessy Boulevard adjacent to the parking lot to facilitate pedestrian crossings.
On November 22, 1992, plaintiff, Kerney H. Tyler, parked his vehicle in OLOL's ground-level parking lot. He crossed Hennessy Boulevard, using a designated cross-walk, and proceeded to visit and spend the night with his mother who was a patient in the hospital. On the morning of November 23, 1992, Tyler decided to move his vehicle to a more convenient location in the parking lot. He again crossed Hennessy Boulevard in a designated cross-walk and moved his vehicle. Thereafter, Tyler attempted to cross Hennessy Boulevard in the middle of the block instead of in a designated cross-walk, and he tripped and fell on a portion of the curb in the median. As a result of the fall, Tyler sustained injuries to his left knee.[1]
On July 15, 1993, Tyler filed an action for damages, naming as defendants Our Lady of the Lake Hospital, Inc., the City of Baton Rouge and Parish of East Baton Rouge (the City-Parish), and XYZ Insurance Company (the insurer of the area where the alleged defect existed). The petition alleged that the defendants were liable, jointly and in solido, under negligence and strict liability theories. OLOL answered the petition, alleging that it does not own Hennessy Boulevard, denying that it owns, controls, or has in its custody or garde the allegedly defective property, and setting forth that it is self-insured. Subsequently, Tyler dismissed the City-Parish from the suit, but reserved his rights as to all other defendants.
On June 21, 1995, trial on the merits was held. The only remaining defendant was OLOL. At the conclusion of Tyler's case, counsel for OLOL moved for an involuntary dismissal. The trial court granted the motion for the following reasons:
The court notes in its reasons for granting the motion that it is clearly not a strict liability case, because the defendant did not own the property at the point where the plaintiff allegedly fell, and therefore the defendant did not have any garde ... over the place where plaintiff may have fallen. Under the strict liability [theory], then, that's out as a predicate for liability in this case. Now, applying the law of negligence, there's no law that I know of, nor has any been cited to the court, where the abutting property owner is under a duty to do anything to repair or maintain or build any structures on a public sidewalk or a public street or road; and therefore, that cause of action falls because of a failure of the plaintiff to establish a prime facie [sic] case.
Tyler appealed from the adverse judgment, assigning the following specifications of error:
1. The trial court committed legal error in finding that [OLOL] did not have custody, control or garde of the defect.
2. The trial court committed legal error in finding that [OLOL] had no duty to [him].
3. The trial court committed legal error in granting [OLOL's] motion for involuntary dismissal.

INVOLUNTARY DISMISSAL
Tyler contends that the trial court erred in granting OLOL's motion for involuntary dismissal at the close of his case.
LSA-C.C.P. art. 1672 B provides as follows:
In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff *684 and in favor of the moving party or may decline to render any judgment until the close of all the evidence.
In a non-jury case, the appropriate standard for the trial court's determination of a motion for involuntary dismissal is whether the plaintiff has presented sufficient evidence on his case-in-chief to establish his claim by a preponderance of the evidence. Hutzler v. Cole, 93-0486, p. 5 (La.App. 1st Cir. 3/11/94), 633 So.2d 1319, 1323, writ denied, 94-0850 (La.5/13/94), 637 So.2d 1070; Shafer v. State, Department of Transportation and Development, 590 So.2d 639, 642 (La.App. 3rd Cir.1991); Brown v. E.A. Conway Memorial Hospital, 588 So.2d 1295, 1298 (La.App. 2nd Cir.1991). In making its determination on such a motion, the trial court is not required to review the evidence in the light most favorable to the plaintiff as is done when a motion for directed verdict is filed in a jury case. Hutzler v. Cole, 633 So.2d at 1323-24; Shafer v. State, Department of Transportation and Development, 590 So.2d at 642. Unlike the motion for a directed verdict in a jury trial, a motion for involuntary dismissal pursuant to LSA-C.C.P. art. 1672 B requires a judge to evaluate the evidence and render a decision based on a preponderance of the evidence without any special inferences in favor of the opponent to the motion. Hutzler v. Cole, 633 So.2d at 1324; Poland v. Glenn, 623 So.2d 227, 230 (La.App. 2nd Cir.), writ denied, 629 So.2d 1171 (La.1993); Barnes v. Thames, 578 So.2d 1155, 1164 (La.App. 1st Cir.1991). In other words, on a motion for involuntary dismissal, the trial judge is only required to weigh and evaluate all of the evidence presented up to that point and grant a dismissal if the plaintiff has failed to establish his claim by a preponderance of the evidence. Hutzler v. Cole, 633 So.2d at 1324; Shafer v. State, Department of Transportation and Development, 590 So.2d at 642.
Proof by a preponderance of the evidence simply means that, taking the evidence as a whole, such proof shows that the fact or cause sought to be proved is more probable than not. Hutzler v. Cole, 633 So.2d at 1324; Barnes v. Thames, 578 So.2d at 1164; Fuller v. Wal-Mart Stores, Inc., 519 So.2d 366, 369 (La.App. 2nd Cir.1988). Although the plaintiff is not entitled to any special inferences in his favor, absent circumstances in the record casting suspicion on the reliability of the testimony and sound reasons for its rejection, uncontroverted evidence should be taken as true to establish a fact for which it is offered. Fuller v. Wal-Mart Stores, Inc., 519 So.2d at 369. A trial court's decision to dismiss based on LSA-C.C.P. art. 1672 B should not be reversed in the absence of manifest or legal error. Phillips v. Phillips, 95-2043, p. 3 (La.App. 1st Cir. 5/10/96); 673 So.2d 333, 334.
In the instant case, in granting OLOL's motion for involuntary dismissal, the trial court determined that Tyler failed to present sufficient evidence to establish his claim of liability against OLOL under either a negligence or strict liability theory of recovery.
In a typical negligence action against the owner of a thing which is actively involved in the causation of injury, the claimant must prove that something about the thing created an unreasonable risk of injury that resulted in damage, that the owner knew or should have known of that risk, and that the owner nevertheless failed to render the thing safe or to take adequate steps to prevent the damage caused by the thing. Kent v. Gulf States Utilities Company, 418 So.2d 493, 497 (La.1982). Under traditional negligence concepts, the knowledge (actual or constructive) gives rise to the duty to take reasonable steps to protect against injurious consequences resulting from the risk, and no responsibility is placed on the owner who acted reasonably but nevertheless failed to discover that the thing presented an unreasonable risk of harm. Kent v. Gulf States Utilities Company, 418 So.2d at 497.
On the other hand, in a strict liability action against the same owner, the claimant is relieved only of proving that the owner knew or should have known of the risk involved. However, the claimant must still prove that under the circumstances the thing presented an unreasonable risk of harm which resulted in the damage or that the thing was defective. The resulting liability is strict in the sense that the owner's duty to *685 protect against injurious consequences resulting from the risk does not depend on actual or constructive knowledge of the risk (the factor which usually gives rise to a duty under negligence concepts). Under strict liability concepts, the owner's relationship with and responsibility for the damage-causing thing gives rise to an absolute duty to discover the risks presented by the thing in custody. Kent v. Gulf States Utilities Company, 418 So.2d at 497. If the owner breaches that absolute duty to discover, he is presumed to have discovered any risks presented by the thing in his custody. Accordingly, the owner will be held liable for failing to take steps to prevent injury resulting because the thing in his custody presented an unreasonable risk of injury to another. Kent v. Gulf States Utilities Company, 418 So.2d at 497.
Thus, while the basis for determining the existence of the duty (to take reasonable steps to prevent injury as a result of an unreasonable risk of harm presented by the thing) is different in strict liability cases and ordinary negligence cases, the duty which arises is the same. The extent of the duty (and the resulting degree of care necessary to fulfill the duty) depends on the particular facts and circumstances of each case. Kent v. Gulf States Utilities Company, 418 So.2d at 497.
Under either theory of liability, Tyler had the burden of proving that (1) the property which caused the damages was in the "custody" of the defendant, (2) the property was defective because it had a condition that created an unreasonable risk of harm to persons on the premises, and (3) the defect in the property was a cause in fact of the resulting injury. Farr v. Montgomery Ward and Company, Inc., 430 So.2d 1141, 1143 (La. App. 1st Cir.), writ denied, 435 So.2d 429 (La.1983).
Custody, distinct from ownership, refers to a person's supervision and control (garde) over a thing posing an unreasonable risk of harm. Thumfart v. Lombard, 613 So.2d 286, 290 (La.App. 4th Cir.), writ denied, 617 So.2d 1182 (La.1993). Garde is the obligation imposed by law on the proprietor of a thing, or on one who avails himself of it, to prevent it from causing damage to others. The fault of the person thus liable is based upon one's failure to prevent the thing from causing unreasonable injury to others. Loescher v. Parr, 324 So.2d 441, 446 (La. 1975).
In the instant case, Timothy A. Cummings, a traffic engineer with the Department of Public Works for the City-Parish, testified that the curb on which Tyler tripped and fell is part of the public area maintained by the City-Parish. Phillip J. Crochet, III, assistant administrator for OLOL, also testified that the curb is not maintained by the hospital, but by the City-Parish. Based on the foregoing undisputed testimony, it is clear that OLOL does not have custody or garde of the curb on which Tyler tripped and fell. As such, the trial court correctly determined that OLOL cannot be found liable for Tyler's injuries under either theory of liability.
A review of the testimony and evidence presented by Tyler indicates that there is a reasonable factual basis for the trial court's determination that Tyler did not present sufficient evidence on his case-in-chief to establish OLOL's liability by a preponderance of the evidence. For these reasons, we conclude that the trial court did not err in granting OLOL's motion for involuntary dismissal.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Appeal costs are assessed against Tyler.
AFFIRMED.
NOTES
[1] Tyler previously had sustained injuries to the same knee.