STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-221


JONATHAN L. WOODS

VERSUS

PREIS PLC


**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C-2020-2554
HONORABLE MICHELLE M. BREAUX, DISTRICT JUDGE

**********

CHARLES G. FITZGERALD
JUDGE

**********

Court composed of Sylvia R. Cooks, Chief Judge, Jonathan W. Perry and Charles G. Fitzgerald, Judges.


AFFIRMED IN PART; REVERSED IN PART;
AND REMANDED WITH INSTRUCTIONS.

Joseph C. Giglio
Christopher B. Bailey
Randazzo Giglio & Bailey LLC
900 E. St. Mary Blvd., Suite 200
Lafayette, Louisiana  70503
(337) 291-4900
Counsel for Plaintiff/Appellant:
     Jonathan L. Woods

Alan K. Breaud
Timothy W. Basden
Breaux & Meyers
Post Office Box 51365
Lafayette, Louisiana  70505
(337) 266-2200
Counsel for Defendant/Appellee:
     Preis PLC

**FITZGERALD, Judge.**

The issue on appeal is whether the trial court erred in granting the defendant's motion for involuntary dismissal as to the plaintiff's claims for unpaid wages, penalties, and attorney fees.

## FACTS AND PROCEDURAL HISTORY

In 2003, the plaintiff, Jonathan Woods (Jonathan), was hired as an attorney by the defendant, Preis PLC (the Firm). During the next sixteen years, Jonathan worked for the Firm under different compensation agreements. Jonathan ultimately resigned his employment effective May 31, 2019.

Two weeks later, on June 14, 2019, Jonathan sent an email to the Firm, demanding payment of $8,410.92 that was withheld from his final paycheck. Jonathan also made demand for his first-quarter bonus of 2019. The Firm responded four days later. Jonathan's quarterly bonus was paid, but his demand for $8,410.92 was rejected.

Many months later, on May 13, 2020, Jonathan sent a second demand to the Firm. Here too, Jonathan made demand for the wages that were withheld from his final paycheck. But this time he also demanded "all wages, commissions, and other compensation actually earned" during his employment though collected by the Firm after he resigned.

Then, on May 29, 2020, Jonathan filed a petition for unpaid wages against the Firm. The petition asserted claims for the wages discussed above, as well as penalties and attorney fees. In answering the petition, the Firm pled several affirmative defenses, including compensation.

A bench trial was held in November 2020. At the conclusion of Jonathan's case-in-chief, the Firm moved for involuntary dismissal of all claims. The trial court

granted the motion. Oral reasons were given from the bench, and written reasons followed. The trial court's ruling was reduced to a written final judgment signed on December 9, 2020. Jonathan now appeals.

On appeal, Jonathan asserts the following assignments of error:

1. The trial court erred, as a matter of law, in enforcing a contractual provision that resulted in forfeiture of $56,463.57 in compensation for work performed by [Jonathan] prior to his resignation as such provision is null and void and against public policy;

2. The trial court erred, as a matter of law, in finding that [Jonathan] entered into an unsigned employment contract with [the Firm] in 2019;

3. The trial court erred in finding that [the Firm] properly withheld $8,410.92 from [Jonathan's] final paycheck; and

4. The trial court erred in failing to award penalties, attorneys' fees, court costs, and legal interest to [Jonathan] for [the Firm's] violation of the Louisiana Wage Payment Act.

## LAW AND ANALYSIS

At the outset, the Firm contends that Jonathan has not appealed the judgment of the trial court, meaning there is nothing for us to review. In support, the Firm does three things. First, it asserts that the only ruling by the trial court was the grant of the motion for involuntary dismissal; that Jonathan's original brief does not assign as error the involuntary dismissal (nor does it identify the involuntary dismissal as an issue for review); and that Jonathan's brief does not contain any argument as to why the granting of the involuntary dismissal was erroneous.

Second, the Firm turns our attention to the Uniform Rules—Courts of Appeal, Rule 1–3, which states: "The Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise." In addition, Uniform Rules—Courts of Appeal, Rule 2–12.4(B)(4) provides that "[a]ll

assignments of error and issues for review must be briefed. The court may consider as abandoned any assignment of error or issue for review which has not been briefed."

And third, the Firm ties it all together by pointing to *Charles v. Landry*, 09-1161 (La.App. 3 Cir. 3/10/10), 32 So.3d 1164.  In that case, the trial court sustained the defendant's peremptory exceptions of prescription and no cause of action.  Yet, on appeal, the plaintiff only assigned as error the trial court's ruling on the exception of no cause of action.  Ultimately, because the ruling on prescription was neither assigned as error nor briefed by the plaintiff, this court refused to consider that issue on appeal based on Uniform Rules—Courts of Appeal, Rules 1–3 and 2–12.4.

In response to the Firm's argument, Jonathan asserts that all four of his assignments of error are directly connected to the involuntary dismissal.  He claims it is undeniable that his appeal is of the trial court's grant of involuntary dismissal, and that there is simply no confusion as to which ruling is being appealed.  We agree.

It is true that the judgment does one thing: it grants the Firm's involuntary dismissal as to all of Jonathan's claims.  But this means that the assignments of error must be read in this context.  In other words, Jonathan's first two assignments are directly connected to the involuntary dismissal of his claim for wages earned during employment but received by the Firm after he resigned.  Jonathan's third assignment is directly connected to the involuntary dismissal of his claim for $8,410.92 that was withheld from his final paycheck.  And Jonathan's fourth assignment is directly connected to the involuntary dismissal of his claim for penalty wages and attorney fees.

In sum, we find that the issue of involuntary dismissal is properly before us. Jonathan's assignments are directly connected to it. *See also* La.Code Civ.P. art. 2129 ("An assignment of errors is not necessary in any appeal.").  Also, all

3

arguments advanced in Jonathan's brief concern the propriety of the trial court's ruling on that issue.

### *Involuntary Dismissal and Our Standard of Review*

The involuntary dismissal of a plaintiff's suit is addressed in La.Code Civ.P. art. 1672, which states in pertinent part:

> B. In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

In deciding a motion for involuntary dismissal under La.Code Civ.P. art. 1672(B), the trial court must determine "whether the plaintiff has presented sufficient evidence on his case-in-chief to establish his claim by a preponderance of the evidence." *Shafer v. State, Through Dep't of Transp. and Dev.*, 590 So.2d 639, 642 (La.App. 3 Cir. 1991). The trial court's decision to grant the motion is reviewed under the manifest error standard of review. *Id*.

That said, when one or more legal errors interdict the trial court's fact-finding process, the manifest error standard is no longer applicable. *Evans v. Lungrin*, 97-541, 97-577 (La. 2/6/98), 708 So.2d 731. Instead, the appellate court uses the de novo standard of review. *Id*. "A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights." *Id*. at 735 (citation omitted).

In addition, "when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual

interpretation is answered as a matter of law." *Sims v. Mulhearn Funeral Home, Inc.*, 07–54, p. 10 (La. 5/22/07), 956 So.2d 583, 590. "The determination of whether a contract is clear or ambiguous is [also] a question of law." *La. Ins. Guar. Ass'n v. Interstate Fire & Cas. Co.*, 93–911, p. 7 (La. 1/14/94), 630 So.2d 759, 764.

### *Assignments One and Two*

We now turn to Jonathan's first and second assignments of error. And, in doing so, we will address them in reverse order.

Our review therefore begins by determining whether the trial court manifestly erred in finding that the Firm's 2019 compensation plan applied to Jonathan. The Firm suggests that such a finding was never made. However, the oral and written reasons for judgment, when reviewed together, reflect otherwise, and Jonathan asserts that this finding was in error. We disagree.

Before going further, a little background is needed. Jonathan was hired by the Firm as an associate attorney in 2003. In late 2009, the Firm offered to Jonathan the classification of profit-sharing partner. Jonathan accepted the offer a few weeks later, and his compensation beginning then consisted of a monthly salary, discretionary bonuses as approved by the Firm, and numerous employment benefits. This continued until the Firm rolled out a new compensation plan at the beginning of 2018, which Jonathan also accepted.

Under the 2018 plan, Jonathan was compensated based strictly on actual fee cash received from his work efforts and, to a limited degree, the efforts of other attorneys who worked on client files that he had originated. Then, in late 2018, the Firm sent notice to its profit-sharing partners, including Jonathan, of a new compensation plan that would take effect a few weeks later. The new 2019 compensation plan was substantially similar to the 2018 plan, but the new plan

changed the dates for certain payments, and it also included specific language for settling-up with attorneys leaving the Firm.

One more thing. The Firm is a professional law corporation. Jonathan, as a profit-sharing partner, never had an ownership interest in the Firm. And throughout his employment with the Firm, Jonathan was an at-will employee. Jonathan admitted all of this at trial.

Now back to Jonathan's assignment of error. In essence, Jonathan argues that he never agreed to the 2019 compensation plan and so it did not apply to him. However, Jonathan's argument is contrary to Louisiana employment law. The following is a succinct explanation of the applicable law:

> An employer and employee may modify their employment contract. A change in the employment contract requires a consent of both the employer and the employee. In an at-will employment relationship, the employer may unilaterally impose prospective changes in the terms and conditions of employment. When it does so, the employee has no obligation to accept the change of terms and may terminate the employment relationship. The employee's acceptance of the change by continuing to work implies his acquiescence in the new contract. It should be remembered that a contract can be amended by silence, inaction, or implication.

> The burden of proving an alteration in the terms of a written employment agreement lies with the party alleging the change. Without reasonable notice of the change and concurrence through, at least, continued performance, the existing contract remains in force and governs the employment relationship.

Rick J. Norman, Louisiana Practice Series: Louisiana Employment Law § 3:24 (2020) (citations omitted).

The record before us reflects that Jonathan received reasonable notice prior to the implementation of the 2019 compensation plan. After the plan was implemented on January 1, 2019, Jonathan continued working for the Firm until he resigned on May 31, 2019. Thus, the trial court did not manifestly err in finding that the 2019

6

compensation plan applied to Jonathan. The record evidence adduced during Jonathan's case-in-chief reasonably supports this finding.

We now turn our attention to the interpretation of the 2019 compensation plan. Jonathan asserts that "[t]he trial court erred, as a matter of law, in enforcing a contractual provision that resulted in forfeiture of $56,463.57 in compensation for work performed . . . prior to his resignation as such provision is null and void and against public policy."

In this assignment of error, Jonathan is referring to the 2019 compensation plan, and more specifically to paragraph 6 therein. However, because paragraph 6 must be read in conjunction with other provisions, the entire 2019 compensation plan is reproduced as follows:

**2019 NEW COMPENSATION PLAN FOR PROFIT SHARING PARTNERS AND OTHER LATERAL ATTORNEYS**

**WILL BE BASED STRICTLY ON ACTUAL FEE CASH RECEIVED**

1. $33^{1/3}$% of actual fee cash received that you billed; PLUS

2. 15% of actual fee cash received that you originated and billed; PLUS

3. 15% of actual fee cash received that you originated but that other Attorneys billed;

4. Due to problems experienced in 2018, any compensation due above your monthly compensation already received will be paid after Q3, within 30 days of the end of that quarter, or by October 31, 2019;

5. Any compensation due you above your monthly compensation already received for Q4 (October, November & December), will be paid within 60 days of the end of Q4, or by February 28, 2020;

6. If your employment terminates at any time during the year, any compensation due you above your monthly compensation already received, or any amounts you owe the Firm, will be determined as of your last day of employment, and will be paid or due the Firm in keeping with the time periods set forth hereinabove in Nos. 4 and 5.

7.     If your monthly compensation already received exceeds the amount you are due at the time periods hereinabove described, the determination of the handling of the deficit shall be in the sole discretion of the Executive Committee;

8.     The cost of any health insurance premiums which may be paid by the Firm on behalf of you and/or your family will be considered part of your monthly compensation.

9.     Monthly draws and compensation will be determined by the Executive Committee in its sole discretion, and may be altered at any time within the sole discretion of the Executive Committee; and

10.    Origination determinations will be made as per the attached Firm Policy in the sole discretion of the Executive Committee.

It is undisputed that after Jonathan resigned on May 31, 2019, the Firm collected an additional $129,483 in "actual fee cash" for work billed by Jonathan. It is also undisputed that if Jonathan had remained with the Firm, his compensation from the $129,483 in actual fee cash would have been $56,463.57 under the terms of the 2019 compensation plan.

Nevertheless, the Firm contends that under the terms of its compensation plan—specifically paragraph 6 when read in conjunction with paragraph 1—Jonathan is owed nothing because the $129,483 in legal fees, which Jonathan billed, was collected by the Firm after May 31, 2019 (the effective date of Jonathan's resignation). At this point, let's take a closer look at the 2019 compensation plan.

Paragraph 1 of the compensation plan provides that Jonathan's compensation includes "$33^{1/3}$% of actual fee cash received that [Jonathan] billed[.]" There is nothing in paragraph 1 that requires the "actual fee cash" to be received during Jonathan's employment. But paragraph 1 must be read in conjunction with paragraph 6, which states: "If your employment terminates at any time during the year, *any compensation due you . . . will be determined as of your last day of employment*[.]" (Emphasis added).

Does the emphasized language of paragraph 6, when read in conjunction with paragraph 1, mean that Jonathan is owed nothing simply because the legal fees for his work were received by the Firm after he resigned? This is the Firm's position; this is how the Firm reads the compensation plan; and the Firm's interpretation is based upon the clear and unambiguous language of the plan. But this is also why the compensation plan violates the non-forfeiture provisions of La.R.S. 23:634.

Louisiana Revised Statutes 23:634(A) (emphasis added) states that

no person, acting either for himself or as agent or otherwise, shall require any of his employees to sign contracts by which the employees shall forfeit their wages if discharged before the contract is completed or if the employees resign their employment before the contract is completed; but in all such cases the employees shall be entitled to the *wages actually earned* up to the time of their discharge or resignation.

According to the Firm, "The act that caused [Jonathan] to earn compensation was the receipt by the Firm of actual fee cash—money in the door." We disagree. Indeed, Jonathan had done the work and billed the clients. The clients, in turn, paid for Jonathan's legal services by tendering actual fee cash to the Firm. Once the Firm *received* the "actual fee cash" attributable to work billed by Jonathan, the Firm was obligated under the 2019 compensation plan to pay Jonathan his proportionate share. When the actual cash fee was received is of no moment.

As we previously explained in *Preis, PLC v. Daily*, 19-700, p. 6 (La.App. 3 Cir. 3/25/20), 297 So.3d 853, 860: "La.R.S. 23:634(A) expressly prohibits employers from including terms in their employment contracts that require employees to forfeit their wages in the event of their resignation; therefore, any such provision in an employment contract would necessarily be unlawful and against public policy."

9

Louisiana Revised Statutes 23:634 was enacted for the protection of the public interest. The public policy addressed in La.R.S. 23:634 is to prohibit the forfeiture of earned wages. *Morse v. J. Ray McDermott & Co.*, 344 So.2d 1353 (La. 1977). What is more, "Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity." La.Civ.Code art. 7.

Again, the interpretation of the 2019 compensation plan is an issue of law, meaning that we interpret the agreement de novo. In doing so, we find that paragraph 6 of the compensation plan, when read in conjunction with paragraph 1, requires Jonathan to forfeit earned wages in derogation of La.R.S. 23:634(A). Based on this finding, we hold that the 2019 compensation plan is null and void to the limited extent that it requires Jonathan to forfeit the earned wages now at issue. We also find that the trial court committed legal error in its interpretation of the 2019 compensation plan. The compensation plan was the law between the parties. *See* La.Civ.Code art. 1983. Had the compensation plan been properly applied to the evidence adduced during Jonathan's case-in-chief, the motion for involuntary dismissal as to Jonathan's claim for $56,463.57 would have been denied.

After all, the evidence adduced during Jonathan's case-in-chief established that Jonathan resigned on May 31, 2019; that Jonathan performed the work that generated $129,483 in fees for the Firm; that the Firm's clients were billed for this work; that the clients paid the Firm actual cash fees of $129,483; that these fees were received by the Firm after Jonathan had resigned; and that Jonathan has been paid nothing for this work because he was not employed by the Firm when these fees were collected. In the end, the evidence adduced by Jonathan established a prima facie case for unpaid wages in the amount of $56,463.57.

10

Accordingly, we reverse this part of the judgment, and we remand this matter to the trial court where the Firm will be afforded the opportunity to present its case-in-chief (defense), followed by Jonathan's case-in-rebuttal, if any.

***Assignment Three***

In this assignment, Jonathan asserts that the trial court erred in finding that the Firm properly withheld $8,410.92 from his final paycheck. The trial court, however, never made this finding. Rather, the trial court granted the Firm's motion for involuntary dismissal as to all of Jonathan's claims, including his claim for this disputed sum. Thus, the issue for our review is whether the trial court manifestly erred in dismissing this claim.

The disputed deductions of $8,410.92 consist of advances that the Firm made to Jonathan during his employment. The advances fall into two categories. The first category is referred to as Exec-U-Care advances. These advances were essentially loans by the Firm to Jonathan to cover uninsured medical expenses. In 2013, Jonathan received $3,631.24 in Exec-U-Care advances; and in 2014, Jonathan received an additional $3,321.95 in Exec-U-Care advances. The second category is referred to as taxes for fringe benefits. Here, the Firm paid the "employee portion" of payroll taxes for Jonathan's fringe benefits. For the years 2013 through 2019, the Firm paid $1,457.73 in taxes on Jonathan's behalf.

Jonathan initially argues that the trial court erred in its grant of involuntary dismissal as to this claim because the Firm had the burden of proving compensation (setoff), and the Firm offered no evidence at trial. True enough, "Louisiana courts have recognized that an employer's claim of setoff, or compensation, constitutes an equitable defense to a penalty wage claim. This situation may arise when, for instance, the employer seeks setoffs against wages based . . . on advances made to

11

the employee[.]" *Richard v. Vidrine Auto. Servs., Inc.*, 98–1020, p. 7 (La.App. 1 Cir. 4/1/99), 729 So.2d 1174, 1178 (citations omitted).

In Louisiana, setoff is more properly referred to as "compensation." Compensation is provided for by La.Civ.Code art. 1893, which states:

> Compensation takes place by operation of law when two persons owe to each other sums of money or quantities of fungible things identical in kind, and these sums or quantities are liquidated and presently due.
>
> In such a case, compensation extinguishes both obligations to the extent of the lesser amount.
>
> Delays of grace do not prevent compensation.

Here, the Firm pled compensation (setoff) as an affirmative defense to Jonathan's claim for wage penalties. "A party that properly pleads setoff as an affirmative defense has the burden of proof of the claim. The defense of setoff requires mutual obligations whereby each obligor owes an equally liquidated and demandable debt to the other." *Hebert v. Ins. Center, Inc.*, 97-298, p. 8 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007, 1012, *writ denied*, 98-353 (La. 3/27/98), 716 So.2d 888.

So, how did the trial court not err in dismissing Jonathan's claim when the Firm had yet to put on any evidence to support its affirmative defense? In short, the essential elements of the compensation defense, including the existence of Jonathan's outstanding debts to the Firm, were proven during Jonathan's case-in-chief. Thus, the Firm was relieved of having to prove the existence of these obligations.

Next, Jonathan argues that the Firm orally agreed to waive repayment of his outstanding debts. This means that Jonathan must prove the existence of the obligation. *See* La.Civ.Code art. 1831. And because "the price or value [of the

12

alleged oral contract] is in excess of five hundred dollars, the contract must be proved by at least one witness and other corroborating circumstances." La.Civ.Code art. 1846. According to the Louisiana Supreme Court, the "other corroborating circumstances" must come from a source other than the plaintiff. *Suire v. Lafayette City–Parish Consol. Gov't*, 04–1459 (La. 4/12/05), 907 So.2d 37. However, at trial, Jonathan failed to introduce any writing or other document to corroborate his own testimony as to the existence of an oral agreement to waive debt repayment. He also failed to present the testimony of any other witness to corroborate his claims.

Finally, Jonathan argues that the Exec-U-Care advances were somehow prescribed. This argument is without any legal basis. First, Jonathan never pled prescription, and La.Code Civ.P. art. 927 provides that "[t]he court may not supply the objection of prescription." Second, prescription could not possibly apply to the offsets because the Firm did not sue to enforce repayment of the debts. And third, "a prescribed obligation arising under Louisiana law may be used as a defense if it is incidental to, or connected with, the obligation sought to be enforced by the plaintiff." La.Code Civ.P. art. 424. As stated previously, the Firm pled compensation as an affirmative defense to Jonathan's claim for wage penalties. Hence, prescription is not a valid objection to this affirmative defense.

In sum, the trial court did not manifestly err in granting the motion for involuntary dismissal as to Jonathan's claim that the Firm improperly withheld $8,410.92 from his final paycheck. The trial court's ruling is reasonably supported by the record.

### *Assignment Four*

The manifest error standard of review applies to a trial court's findings of fact

13

with respect to whether a plaintiff is entitled to penalty wages. *Loup v. La. State School for the Deaf*, 98-329 (La.App. 1 Cir. 2/19/99), 729 So.2d 689. Under La.R.S. 23:631, when an employee resigns, an employer has a duty to pay that employee any wages then due to him on or before the next regular payday for the pay cycle during which the employee was working at the time of separation or no later than fifteen days following the date of resignation, whichever occurs first.

In addition, La.R.S. 23:632(A) provides that

[a]ny employer who fails or refuses to comply with the provisions of La R.S. 23:631 shall be liable to the employee either for 90 days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

To recover penalty wages, the claimant must show that "'(1) wages were due and owing; (2) demand for payment thereof was made where the employee was customarily paid; and (3) the employer did not pay upon demand.'" *Winkle v. Advance Prods. & Sys, Inc.*, 98-694, p. 14 (La.App. 3 Cir. 10/28/98), 721 So.2d 983, 990 (quoting *Hebert v. Ins. Ctr., Inc.*, 97-298, p. 9 (La.App. 3 Cir. 1/7/98), 706 So.2d 1007, 1013, *writ denied*, 98-353 (La. 3/27/98), 716 So.2d 888).

Finally, La.R.S. 23:632(C) allows for an award of attorney fees to an employee when an employee files a "well-founded suit for any unpaid wages."

Based on our ruling affirming the involuntary dismissal of Jonathan's claim for $8,410.92, the trial court also did not err in dismissing Jonathan's corresponding claim for wage penalties.

Turning now to the Jonathan's claim for wage penalties for the Firm's nonpayment of $56,463.57. We will review the dismissal of this claim de novo for two reasons. First, we have already determined that the trial court committed legal

error in its interpretation of the 2019 compensation plan. And second, the trial court did not make any factual findings pertaining to the involuntary dismissal of this claim. Based on our review of the record, we conclude that Jonathan presented sufficient evidence on his case-in-chief to establish a prima facie case for this wage penalty claim. We therefore reverse this part of the judgment, and we remand the matter for the Firm to present such evidence as it chooses.

Finally, we also reverse the trial court's grant of involuntary dismissal as to Jonathan's claim for attorney fees, and we remand the matter for the completion of trial.

## DECREE

For the reasons set forth above, we affirm the trial court's judgment granting the involuntary dismissal of Jonathan's claim for $8,410.92 in unpaid wages; and we also affirm the grant of involuntary dismissal as to Jonathan's corresponding wage penalty claim.

However, we reverse the trial court's judgment granting the involuntary dismissal as to Jonathan's claim for $56,463.57 in unpaid wages; we also reverse the grant of involuntary dismissal as to Jonathan's corresponding wage penalty claim; and finally, we reverse the grant of involuntary dismissal as to Jonathan's claim for attorney fees. We reverse these parts of the judgment, and we remand this matter to the trial court where the Firm will be afforded the opportunity to present its case-in-chief (defense), followed by Jonathan's case-in-rebuttal, if any. *See Taylor v. Tommie's Gaming*, 04-2254 (La. 5/24/05), 902 So.2d 380.

Costs of this appeal are to be divided equally between the parties.

**AFFIRMED IN PART; REVERSED IN PART;**
**AND REMANDED WITH INSTRUCTIONS.**