# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**22-442**


**RICHARD LABORDE**

**VERSUS**

**AERIAL CROP CARE, INC., ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 84013
HONORABLE ROGER P. HAMILTON, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## VAN H. KYZAR
### JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Van H. Kyzar, and Gary J. Ortego, Judges.


**AFFIRMED.**

**Trent John Gauthier**
**100 Asma Blvd, Suite 310-E**
**Lafayette, LA 70508**
**(337) 290-1806**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Richard Laborde**

**Leo R. McAloon, III**
**Nicholas S. Bergeron**
**Gieger, LaBorde, & Laperouse, LLC**
**701 Poydras Street, Suite 4800**
**New Orleans, LA 70139**
**(504) 561-0400**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
**Karl A. Comeaux**
**Aerial Crop Care, Inc.**
**Starr Indemnity and Liability Co.**

**Ian Alexander Macdonald**
**Jones Walker**
**600 Jefferson Street, Suite 1600**
**Lafayette, LA 70501**
**(337) 593-7617**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Louisiana Farm Bureau Ins. Co.**

**KYZAR, Judge.**

Plaintiff appeals the granting of an involuntary judgment of dismissal at the conclusion of the presentation of plaintiff's case in chief in this suit for damages to property from an alleged aerial crop chemical overspray. For the reasons set forth hereafter, we affirm the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Richard LaBorde, filed a Petition for Damages on May 26, 2016 naming Aerial Crop Care, Inc., Thomas Allen Burbick, Karl A. Comeaux, Richard Grain, Inc., and XYZ Insurance Companies as defendants. Therein, Plaintiff alleged that on June 1, 2015, his property suffered significant and irrevocable damage following the application of an airborne pesticide on the neighboring property by Comeaux, who is an aerial crop applicator. Plaintiff alleged specific items of damage to his property, including: the death of nine mature trees; severe damage to fourteen other trees; significant and noticeable reduction in a number of different plant species, including those found in the pond on Plaintiff's property; water contamination of the same pond; and lasting and severe effects on multiple animals owned by Plaintiff, including cancer and infertility.

Plaintiff asserted in his petition that the damages to his property were caused by the negligence of Defendant, Karl A. Comeaux, and his application of the pesticide product Roundup Powermax on non-target areas and in a manner inconsistent with the label of said pesticide, in contravention of La.R.S. 3:3252(A)(2). Plaintiff claims Comeaux erred by failing to take adequate precautions against a known danger of pesticide "drift" and do what he reasonably should have done at a time when he reasonably should have done the same, by failing to properly lookout and observe the wind direction and wind speed on June 1, 2015. Plaintiff contends Comeaux erred by applying pesticide in a careless and

negligent manner when said pesticide application could not be made with reasonable safety. He also claims other acts and omissions committed by Comeaux which were in contravention of the exercise of due care, prudence, and laws applying to negligence and the handling of hazardous substances under the Louisiana Pesticide Law, La.R.S. 3:3201, et seq., and La.Civ.Code Articles 667 and 2315. Plaintiff stated that Comeaux was employed by Aerial Crop, Inc. at the time of the incident and was acting within the course and scope of his employment in spraying crop pesticides that damaged his property. He further claimed that Aerial Crop was performing services for Richard Grain, Inc. at the time, such that both are also liable for the damages to his property.[1]

On July 1, 2016, Comeaux and Aerial Crop answered Plaintiff's suit, generally denying the allegations and asserting thirteen affirmative defenses. Starr Liability and Indemnity Company answered as the insurer for Aerial Crop. Louisiana Farm Bureau Insurance Company also answered the suit, in place of XYZ Insurance Companies. Richard Grain, Inc. eventually also answered Plaintiff's suit, filing a motion on August 4, 2016 for summary judgment as to its liability, which was granted by the trial court December 21, 2018, dismissing Richard Grain, Inc. as a party to the lawsuit, with prejudice.

Plaintiff moved for partial summary judgment on the issue of liability, which was denied following a hearing on September 17, 2018. Thereafter, Comeaux, Aerial Crop, and Starr moved for summary judgment on the issue of liability.

By judgment, dated January 17, 2019, the trial court granted Defendants' partial motion for summary judgment as to Plaintiff's claims for personal injuries

---

[1] On July 30, 2020, Plaintiff filed an amending and supplemental petition that itemizes the damages to his property by inserting values totaling $274,450.00 and claiming entitlement to damages to immovable property for environmental damage, costs of cure/loss of tree and plants, aesthetic value, and for his own mental anguish, past and future, exemplary and punitive damages and decontamination costs.

and for injuries to his farm animals and pets, dismissing those claims with prejudice. The trial court took under advisement Defendants' objections to Plaintiff's oppositional evidence and Defendants' motion for summary judgment as to Plaintiff's property damage claim. On January 18, 2019, the trial court signed another judgment, this time denying Aerial Crop's motion for summary judgment as to Plaintiff's property damage claim, as well as overruling multiple evidential objections by Aerial Crop.

Trial was held on July 19 and 20, 2021. Plaintiff presented eight witnesses, including his own testimony. At the conclusion of Plaintiff's case in chief, Defendants moved for an involuntary judgment of dismissal, asserting that Plaintiff had failed to prove the essential elements of his claim. The trial court granted the motion, dismissing the case, with prejudice. Formal judgment was signed July 26, 2021. This appeal followed. Plaintiff asserts as his sole assignment of error that the trial court erred, and/or abused its discretion, and/or committed manifest error in granting an Involuntary Dismissal, with Prejudice, of Plaintiff's civil lawsuit.

## DISCUSSION

In his action here, Plaintiff seeks to recover property damages caused by the purported negligence of Aerial Crop and its pilot, Mr. Comeaux. "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La.Civ. Code art. 2315(A). "The overarching, guiding principle of property damage compensation . . . is that the owner be put in the same position he was in before the damage." *Sicily Island Holdings, LLC v. United States Aviation Underwriters Inc.*, 19-703, p. 8 (La.App. 3 Cir. 5/6/20), 297 So.3d 935, 941 (citing *Roman Catholic Church v. Louisiana Gas. Service Co.*, 618 So.2d 874 (La. 1993). In *Sicily Island*, the plaintiff sued to recover damages to his

3

property from an alleged herbicide drift that occurred when defendant sprayed its property via an aerial application of chemicals, as is the case here.

Under Louisiana's duty-risk analysis for negligence, a plaintiff must prove five elements: (1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. *Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La. 3/10/06), 923 So.2d 627. Failure to prove any one of the elements is fatal to a plaintiff's recovery of damages. *Id.*

During a non-jury trial, a party may move for a dismissal of the plaintiff's action after plaintiff has completed his or her presentation of evidence, on the grounds that he or she has not shown the right to relief based upon the facts presented and the law. La.Code Civ.P. art. 1672. Thereafter, the trial court may "determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence." *Id.* In deciding to grant or deny a motion for involuntary dismissal, "the trial court must determine 'whether the plaintiff has presented sufficient evidence on his case-in-chief to establish his claim by a preponderance of the evidence.'" *Woods v. Preis PLC*, 21-221, p. 5 (La.App. 3 Cir. 11/3/21), 330 So.3d 1128, 1133, *writ denied*, 21-1808 (La. 1/26/22), 332 So.3d 83 (citing *Shafer v. State, Through Dep't of Transp. and Dev.*, 590 So.2d 639, 642 (La.App. 3 Cir. 1991)). "The trial court's decision to grant the motion is reviewed under the manifest error standard of review." *Id.* A trial court's ruling on a motion for involuntary dismissal is entitled to much discretion, and a reviewing court may not reverse a ruling on a motion for involuntary dismissal unless it is manifestly

4

erroneous or clearly wrong. *Fontenot v. Williams*, 22-519 (La.App. 3 Cir. 8/11/22), 348 So.3d 117.

Defendants argue that Plaintiff failed to prove all of the elements of his claim, and thus, the trial court's granting of their motion for involuntary dismissal was correct. In support of his case, Plaintiff presented the testimony of eight witnesses, including himself.

Brittany LaPointe Bordelon, a Registered Nurse at the time of trial but formerly employed by the Department of Agriculture and Forestry, testified that she was called out to the property on June 1, 2015, and went back to inspect it on June 11. While she took photos that she stated depicted damage to vegetation and trees, she admitted that she could not testify the cause of any of the conditions depicted, stating "[s]ince I'm not an expert witness, no, I can't." She was asked about damage to willow trees and cattails on the southeast corner of the pond area that she had attributed to the spraying of Roundup, but she testified that she was not aware that Mr. Laborde had conceded that those particular trees and vegetation around it had been dead since 2013, as a result of a previous complaint of pesticide overspray unrelated to the present one. Ms. LaPointe also admitted that she had not been made aware that Mr. LaBorde had made similar complaints of damage to his property for the five years preceding the 2015 complaint.

Jonathon Bordelon, a district manager for the Department of Agriculture and Forestry at the time, testified that he accompanied Ms. LaPointe on June 11, 2015 to inspect Plaintiff's property. He stated that he assisted her in taking photographs of the property but did not take samples. Mr. Bordelon testified that he did see signs of Roundup application on some of Plaintiff's trees. However, he also testified that he was unaware of a report of Roundup damage on Plaintiff's trees filed with his department just a year earlier in 2014.

5

Heather Pettus,[2] Property Manager for SEMS, Inc. testified that she did a site assessment on the LaBorde property beginning June 15, 2016, one year after the alleged contamination. She testified that she collected samples from the property on August 10, 2016, but did not explain how she collected the samples, what she was testing for, or any details pertaining to such. She then stated that only one of the samples, taken from a Hackberry tree at the property boundary line from a height ten feet up into the tree came back from testing through a laboratory as positive for Glyphosate, the toxic chemical in Roundup. She took four other samples from different areas along the property, and there were no findings of Glyphosate in any of these samples. She admitted that she could not testify as to the source of any Glyphosate found or when it was applied. She did not recall if she was given any information about any previous exposures to this chemical prior to the complaint from 2015. When asked if she was aware of the previous use of Roundup and the "ground applications that occurred in 2010, '11, '12, '13 and '14 to Mr. LaBorde's property" she replied, "I don't recall that, no."

Ronnie Mulberry, employed by the Louisiana Department of Agriculture and Forestry, testified. He stated that he issued a warning letter to Aerial Crop and Comeaux for the 2015 incident based on the information in the report by Ms. LaPointe for the department, but he admitted that he had completed no investigation himself and that no formal action was taken against Comeaux for the alleged violation, other than require he attend a seminar before the next growing/flying season. In addition, Mr. Mulberry stated he had no knowledge that Mr. LaBorde had made complaints about overspray by a ground rig in 2010, 2011, 2012, 2013, or 2014. He stated that he had assumed the overspray and damage

---

[2] Ms. Pettus' name is spelled at other times in the transcript "Pettis". For consistency, we will spell it "Pettus".

6

incurred resulted from the aerial application in 2015, not knowing about the prior pesticide applications and accompanying complaints.

Dane Morgan, another employee of the Louisiana Department of Agriculture and Forestry, also testified. Part of his job duties is to act as Records Custodian for the entire department, and he authenticated the records associated with Mr. LaBorde's property. He admitted that he had no part in the investigation of the complaint.

Mitchell Dekerlegand is a neighbor of Plaintiff and also owns property that borders Richard Grain, Inc.'s land. He testified that he witnessed a crop duster on June 1, 2015 spraying the Richard Grain property and that he witnessed some spray coming over onto Mr. Laborde's property. He testified that Plaintiff's tree line following his fence was in good shape prior to the June 2015 application and that after the spray, a few days later they were turning brown. However, he also testified to having the aerial spray drift onto his property as well during the same application, though this would require the wind to have been blowing different directions to cause drift to both properties.

Lisa Lorman is a former girlfriend of Plaintiff and testified that Plaintiff bought the land in 2004 and that she helped him plant and landscape the grounds. Though their relationship ended in 2012, she continued to visit as a friend. Ms. Lorman testified that when she went to Plaintiff's house a week after the June 1, 2015 incident, the majority of the trees down the driveway were turning yellow/brown. After that date, the trees purportedly got worse, with leaves falling off. However, she also noted that she was aware of previous damage and complaints after numerous ground applications of pesticide in the years leading up to 2015. She noted numerous trees and vegetation that had shown signs of suffering before the June 15, 2015 aerial application, and she offered no evidence

7

showing that the deterioration in the trees' health was caused by the June 1, 2015 application.

Plaintiff also testified himself about the purported damage to his property and the drift from the aerial application from the crop duster. However, he failed to offer evidence as to how this damage was separate and distinct from his previous complaints.

Following the close of Plaintiff's case, Defendants moved for an involuntary dismissal, contending that Plaintiff failed to establish the necessary element of causation in order to prevail in his property damage claim. The trial court agreed. To recover, a plaintiff must show that the defendant's conduct is the cause in fact of the plaintiff's injuries. *Lemann*, 923 So.3d 627. An action is the cause in fact of an injury if it is a substantial factor in bringing about the harm, such that the harm would not have occurred without it. *Miller v. Shelter Ins. Co.*, 18-216 (La.App. 3 Cir. 1/30/19), 266 So.3d 347. Failure to prove any element of a plaintiff's case is fatal to the plaintiff's recovery for damages. *Lemann*, 923 So.3d 627. In its reasons for judgment granting the La.Code Civ.P. art. 1672(B) motion for involuntary dismissal, the trial court stated as follows:

> The Court reviewing the law – Louisiana courts have adopted a duty risk analysis on whether liability exists under the facts of a particular case. The Plaintiff in this case has to prove five separate elements according to [*Christy v. McCalla*, 11-366 (La. 12/6/11), 79 So.3d 293]. The Plaintiff has to prove these elements[:] that the Defendant had a duty to perform his conduct to a specific standard of care, that the Defendant's substandard conduct was a cause [in] fact of Plaintiff's injuries, the Defendant['s] substandard conduct was the legal cause of Plaintiff's injuries, and that there were actual damages.
>
> In [*Lemann v. Essen Lane Daiquiris, Inc.*, 05-1095 (La. 3/10/06), 923 So.2d 627], a negative answer to any of the inquiries of the duty risk analysis results in the determination of no liability. The cause in fact test is a but for the Defendant's conduct the injuries would not have been sustained and the legal causation that there be a substantial relationship between the conduct complained of and the actual harm and cure incurred.

8

In the case we heard from Heather Pettus, who collected samples in 2016 and the complained-of injury happened in June of 2015. The collection of samples was a year after the 2015 incidents with the crop duster. The Plaintiffs have not produced any scientific evidence. Also the glyphosate was found on the hackberry tree testing that was done in 2016. Ronnie Mulberry, he did not investigate but testified that a warning letter was an action without a fine. This warning letter did not show any factual finding by the Department of Agriculture.

Mr. Mitchell Dekerlegand which was the neighbor who testified that he was sprayed on July – on June 2015, and actually his testimony corroborates the testimony of the agent, LaPointe, who said the wind speed was in a northern direction.

The Court will note that the northern direction based upon the pictures and diagrams presented to the Court would be consistent with the spraying because the neighbor's house was in the northern part or north of Mr. LaBorde's property. So as a result, the wind direction that day – or the wind direction was north and with the neighbor being sprayed by the crop duster or the chemicals it would've corroborated the wind direction. So it would somewhat be hard for the court to find the spray went onto Mr. LaBorde's property when the wind was in a northern direction.

Lisa Lorman, the Court finds, was less credible. She testified there was a change in the property, but there was no scientific evidence to prove the change in the property. Brittany LaPointe also with the Department of [Agriculture] and Forestry stated that she went out, however she did not collect samples. Even though the Department of Agriculture had the capabilities of testing the samples for the chemicals, she said it was not done. Although she did find that they showed symptoms of herbicides, there's no scientific link between the herbicide and the problems that M[r]. LaBorde had with his acreage. Ms. LaPointe had two years' experience and again, she did not retest.

The Court finds there are several intervening causes in this case. The Plaintiff testified through his own testimony that he sprayed the land with 2, 4-D which is a[n] herbicide. There's not been any type of soil restoration or remediation from the prior drift, so there's no way for this Court to find – there's no way for this Court to consider what happened in June 2015 and to see where damages from prior years ended and when new damages started.

And also on June 2015, the [Plaintiff] had the opportunity to collect samples as he knew the place where he believed that the drift from the aerial spraying occurred, he could have easily collected samples, and he didn't. I find that the warning letter given by the Department of Agriculture was just that; a warning letter. There was

no factual finding and no scientific evidence to substantiate or cooperate the spraying cased the damages to Mr. LaBorde's property.

As a result, the court is granting the involuntary dismissal. I will cast costs on the Plaintiff.

From our review of the evidence before the trial court at the close of Plaintiff's case here, we cannot conclude that the trial court was manifestly erroneous or clearly wrong in granting Defendants' motion for involuntary dismissal. Where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. *Arceneaux v. Domingue*, 365 So.2d 1330, 1333 (La.1978). "When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Rosell v. ESCO*, 549 So.2d 840, 844 (La.1989).

Here, the trial court focused not only on the credibility of the various witnesses, but it also looked to the lack of scientific evidence showing that whatever damage may have been present on the property was caused by the incident of aerial spraying in 2015, rather than from earlier incidents previously complained of by Mr. LaBorde in 2010, 2011, 2012, 2013 and 2014. All of the previous incidents involve the alleged overspray of chemicals as well, but do not involve Aerial Crop and its pilot, Mr. Comeaux. None of the witnesses presented testified that this particular incident in 2015 in fact resulted in the extensive type of damage complained of by Mr. LaBorde.

Part of Plaintiff's burden was to prove that it was Aerial Crop's actions in its spraying of the neighboring property that caused the damage that he complains

10

occurred to his property and the extent of that damage. The trial court, in granting Defendants motion, found that he did not meet this burden. After a thorough review of the record, we find no manifest error in that decision.

## DECREE

Accordingly, we affirm the ruling of the trial court, granting Defendants' motion for involuntary dismissal, dismissing Plaintiff's case with Prejudice. All costs of this proceeding are assessed to Plaintiff, Richard LaBorde.

**AFFIRMED.**